THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANRIQUE GLOVER, Defendant-Appellant.

First Department, July 16, 1981

### APPEARANCES OF COUNSEL

*Richard F. Hope* for appellant.

*William L. McGuire* of counsel *(Jerrold L. Neugarten* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J.

It was at 4:35 on a Sunday morning in January, 1979 that police responded to a radio call about a disturbance at West 115th Street and St. Nicholas Avenue. Upon arrival at the scene, the police observed four individuals, one of whom was defendant, standing in the middle of the intersection. Defendant was playing his radio loudly. The police car approached the group and one of the two officers told the defendant to lower the volume on the radio. Defendant then took the radio and went to the sidewalk with his three companions. At this point there is a dispute as to whether defendant had complied with the police request to lower the volume on the radio. The police, maintaining that de-

fendant had not heeded the warning, testified that one of the officers then left his vehicle and approached defendant to tell him again to turn the radio off or lower its volume. At this point a second police car arrived on the scene, and two officers started to emerge from that car. Defendant then put the radio on the ground and ran in an easterly direction up 115th Street. One of the officers from the first car gave chase and cornered him in a vacant lot. The officer testified that during the pursuit he observed defendant remove a revolver from his waistband, discarding it as he ran through the lot. Defendant was indicted for criminal possession of a weapon in the third degree.

He was convicted of this charge after jury trial, and sentenced to imprisonment for an indeterminate term of two to six years. His appeal challenges in substance the denial without hearing of his motion to suppress the physical evidence, asserting automatic standing to demand a right to such a hearing. Indeed, under the rules in *Jones v United States* (362 US 257) a defendant was entitled to assert automatic standing to object to search and seizure where possession of the seized evidence was an essential element of the offense charged. That rule has since been narrowed by the Supreme Court in cases involving searches for evidence technically in possession of another *(United States v Salvucci,* 448 US 83; *Rawlings v Kentucky,* 448 US 98). The doctrine of "automatic standing" was dismantled in those cases because the defendants there had no expectation of privacy with respect to the search of the area where the goods were seized, and thus the defendants were not aggrieved by that search (see *People v Buckley,* 81 AD2d 511).

But the demise of the "automatic standing" doctrine does not negate a criminal defendant's right to a hearing on suppression of physical evidence where there is at least a question as to a legitimate expectation of privacy. In *People v Howard* (50 NY2d 583), police in a car patrolling a high crime area observed the defendant "furtively" walking down the street carrying a woman's vanity case. When the defendant refused a direction to approach the police car, he bolted from the scene, chased on foot by the officers who ultimately retrieved the discarded vanity case which con-

tained a gun and narcotic contraband. The Court of Appeals ruled that under these circumstances the police had a right to question the defendant, but had no right to force him to answer. Absent any indication that a crime had been or was being committed, defendant's flight, even in connection with his refusal to respond to the police invitation to approach their vehicle, did not give the police the right to chase the defendant for the purpose of arresting or searching him or both (50 NY2d, at p 592). Further, the spontaneous discarding of possessions during this chase was not a calculated move on the defendant's part which would amount to an abandonment or a knowledgeable waiver of the constitutional protection against warrantless searches (50 NY2d, at p 593; cf. *People v Boodle*, 47 NY2d 398, cert den 444 US 969). As *Howard* states (p 586), "An individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. Though the police officer may endeavor to complete the interrogation, he may not pursue, absent probable cause to believe that the individual has committed, is committing, or is about to commit a crime, seize or search the individual or his possessions, even though he ran away. Nor when the individual, cornered by his pursuers in the basement of a building and while looking for a way out of the basement, drops or throws a package he was carrying into a pile of junk, has he been shown to have intentionally abandoned the package so as to make a warrantless search and seizure permissible. The order of the Appellate Division should, therefore, be reversed, the motion to suppress should be granted and the indictment should be dismissed."

The prosecution maintains that a defendant forfeits his constitutional right to challenge a seizure of evidence if he denies possession to begin with. But *Howard (supra)* clearly indicates no such forfeiture where the seizure is a result of a police chase that had no justification from the start. The defendant in the case at bar was no more involved in criminal activity by playing his radio loudly in the early morning hours than was Howard in "furtively" walking down the street in a high crime area while carry-

ing what appeared to be a woman's vanity case. Put simply, the police do not have the right to chase every "suspicious-looking" individual where there is no indication of criminal activity afoot. As in *Howard,* there was no evidence of criminal activity, past, present or contemplated. Had defendant dropped contraband at the scene before running off there might have been probable cause for an arrest. Moreover, such an action could be deemed to be the result of a calculated risk amounting to a constitutional waiver (see *People v Boodle, supra).* However, *Howard* precludes the seizure of evidence acquired during the course of an unwarranted chase.

Defendant was entitled to a hearing on his motion to suppress. On this record the motion should have been granted. However, the People now assert that other evidence bearing on the issue would have been presented at a suppression hearing. Accordingly we now direct such hearing.

The action should be remanded for a hearing on defendant's motion to suppress and the appeal from the judgment, Supreme Court, New York County, rendered December 7, 1979, convicting defendant of criminal possession of a weapon third degree, should be held in abeyance pending such hearing and a decision by the hearing Judge.

KUPFERMAN, J. P. (dissenting). From the facts on which the court's opinion relies, it is apparent that the defendant was violating an antinoise ordinance of the City of New York. (See Administrative Code of City of New York, § 1403.3-3.01.) If a traffic violation (see *People v Ingle,* 36 NY2d 413) permits the police to inquire, a violation of an antinoise ordinance should stand on the same footing. Further, unlike the situation in *People v Howard* (50 NY2d 583) the police here were not in plain clothes nor in an unmarked automobile (50 NY2d, at p 590). As was said in *People v Boodle* (47 NY2d 398, 405, cert den 444 US 969) "the purpose of the exclusionary rule would not be served by granting the motion to suppress".

CARRO, J., concurs with FEIN, J.; SANDLER and SULLIVAN, JJ., concur in the result only; KUPFERMAN, J. P., dissents in an opinion.

Appeal from judgment of the Supreme Court, New York County, rendered on December 7, 1979, held in abeyance pending a hearing on defendant's motion to suppress and a decision by the hearing Judge.