THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLAH BARSHAI, Also Known as BARSHAI ALLAH, Appellant.

First Department, March 29, 1984

**APPEARANCES OF COUNSEL**

*Henry Winestine* of counsel (*William E. Hellerstein,* attorney), for appellant.

*Bruce Allen* of counsel (*Norman Barclay* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

**OPINION OF THE COURT**

SANDLER, J.

This is an appeal from an order of the Supreme Court, New York County (ROTHWAX, J.), entered on April 11, 1983, denying defendant's motion pursuant to CPL 440.10 to vacate an affirmed judgment of conviction of the defendant on the essential ground that the failure of his trial

counsel to move to suppress certain evidence critical to his conviction violated his constitutional right to effective assistance of counsel.

In affirming the defendant's conviction for robbery in the first degree and related offenses, this court did so "without prejudice to any post-conviction motion defendant may be advised to make based on a claim of ineffective representation by counsel." (*People v Barshai,* 72 AD2d 503.) Leave to appeal having been denied by a Judge of the Court of Appeals (48 NY2d 977) defendant next pursued his claim in a petition for habeas corpus relief in the United States District Court for the Southern District of New York. The petition was dismissed on the ground that State remedies had not been exhausted because the record failed to disclose the reasons for the failure to make a suppression motion. (*Allah v Henderson,* 526 F Supp 282, affd 697 F2d 287.)

The motion pursuant to CPL 440.10 followed. The moving papers include an affirmation by the defendant-appellant's attorney that in a conversation with defendant's trial counsel the latter stated that he had not moved to suppress because the defendant had told him that he never possessed any of the items in question, and accordingly he did not believe that the defendant had standing to make the motion.

At about midnight on November 4, 1976, the complainant, Spiros Papankhas, was the victim of a robbery perpetrated by two men, one of whom was armed with a gun. The robbery commenced at the doorway to his apartment building and proceeded into the complainant's fourth floor walkup apartment. As here pertinent, there was taken in the course of the robbery some $230 in cash, half a torn dollar bill, a set of complainant's house keys, a jar of pennies, and his bank passbook.

About one hour later, two police officers patrolling the area around York Avenue and 70th Street observed the defendant and a codefendant (Gillette) in what appeared to be an altercation with a third person. The three men separated, and the defendant and Gillette walked toward a bus stop. Gillette was carrying a jar of pennies which he placed on the sidewalk behind the bus stop enclosure. The

officers left the car and directed the defendant and Gillette not to move. Defendant continued to walk, and when an officer yelled, "Police. Don't move", he started to run. The officer followed, stopping momentarily to radio a request for help while the other officer detained Gillette.

The defendant was seen by a civilian witness to throw a small dark object over the terrace of 420 East 70th Street. Two officers responding to the radio call stopped the fleeing defendant. While frisking the defendant, he was seen to put his hands into a pocket. A search of the pocket disclosed the complainant's bankbook. The police thereafter found in the general area that had been described by the civilian a gun loaded with three live rounds. There was also recovered from the defendant at the station house three $20 bills and one half of a torn dollar bill. A search of Gillette disclosed the complainant's keys, $75 in cash, and a bloodstained pair of pants.

After the indictment and prior to trial, Gillette's attorney moved to suppress the items found on Gillette, alleging, on the basis of what he had been told by an Assistant District Attorney, that these items would be offered in evidence against Gillette. The District Attorney consented to a hearing, and the court granted the motion to suppress after the hearing. The indictment against Gillette was thereafter dismissed. No motion to suppress was made on behalf of this defendant, who was convicted after a trial in which there was introduced into evidence the gun and the items of evidence found on him and on Gillette.

In substance, the defendant urges on the appeal that his constitutional right to effective assistance of counsel was violated by the failure of his trial attorney to move to suppress the gun and the items of evidence allegedly found on his person, particularly in light of the successful motion that had been made on behalf of the codefendant, and that such a motion would have resulted in the suppression of evidence clearly essential to his conviction.

Although defendant's contention is a substantial one, and the issue presented is not free from doubt, we have concluded after a study of the relevant facts in light of the legal authorities at the time of this 1977 trial that the failure of defendant's experienced trial counsel to move to

suppress did not violate defendant's constitutional right to the effective assistance of counsel. In reaching this conclusion, we recognize that the central importance of the items of evidence in question to the outcome of defendant's trial was such that any reasonable doubt counsel entertained as to the viability of a motion to suppress should have been resolved in favor of making the motion. On the other hand, in the then existing state of the law, defense counsel had a solid basis for the judgment that defendant lacked standing to move to suppress items of property which he denied owning or possessing. We are not persuaded that such a good-faith judgment by an experienced lawyer can fairly be characterized as constituting ineffective assistance of counsel.

Moreover, it seems to us pertinent to the issue raised that defense counsel could reasonably have believed that the motion, even if standing were established, had little, if any, chance of success.

Although the central issue has been argued in terms of whether or not defendant had standing to move to suppress, it becomes apparent on analysis that the word "standing" somewhat obscures the nature of the underlying problem presented. Indisputably a defendant has standing to move to suppress items of property taken from his person, precisely as would a tenant of an apartment have standing to move to suppress property seized as a result of a search of his apartment. The real question presented is the character of the allegations necessary under CPL 710.20 and 710.60 to establish the kind of proprietary or possessory interest in seized property that would constitute defendant an aggrieved person with standing to move to suppress. More specifically, the question confronting defense counsel was whether a defendant who denied possession or ownership of certain items of evidence could nonetheless allege standing on the basis of a lawyer's affidavit asserting what the lawyer had been told as to what the prosecutor intended to prove. Although CPL 710.60 (subd 1) specifically permits a motion to suppress to include allegations of fact based on "information and belief", it is by no means self-evident that this language was intended to permit standing to be so established

with regard to items of evidence concerning which a defendant, necessarily with direct knowledge of the facts, denies any proprietary or possessory interest.

The answer to this question as of the time of the 1977 trial is less clear than one would have supposed. Perplexingly, the issue appears not to have been addressed in any reported New York opinion, trial or appellate, prior to this court's decision in *People v Sutton* (91 AD2d 522) decided some years after the defendant's trial, and in which this court, in a carefully limited decision turning on the particular facts in the record, upheld the defendant's right to a hearing notwithstanding his failure to assert directly a possessory interest in the seized evidence. (Cf. *People v Taylor,* 97 AD2d 381.) In the absence of any reported New York decision addressing the issue at the time of the defendant's trial, it seems appropriate to an evaluation of trial counsel's decision not to move to suppress, although not necessarily decisive, to refer to the body of law that had developed in the Federal courts under subdivision (e) of rule 41 of the Federal Rules of Criminal Procedure (in US Code, tit 18, Appendix), the Federal counterpart to CPL article 710. A study of the Federal cases indicates that under the dominant Federal rule defendant would have lacked standing to move to suppress items of property as to which he did not allege, and in fact disclaimed, any proprietary or possessory interest.

Indeed, this prevalent Federal view appears to have been the principal factor in persuading the Supreme Court in *Jones v United States* (362 US 257) to adopt with regard to possessory crimes the doctrine of automatic standing, a doctrine which more recently has been abrogated. (See *Rakas v Illinois,* 439 US 128; *United States v Salvucci,* 448 US 83.) Thus in *Jones* the Supreme Court said (at p 261): "To establish 'standing,' Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched."

Underlining the dilemma that had confronted defendants in cases in which possession of the seized items in question was an essential element of the crime, the Supreme Court in *Jones* (*supra,* at p 262) quoted the following

from an opinion by Judge LEARNED HAND: " 'Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question * * *' *Connolly* v. *Medalie,* 58 F2d 629, 630."

Of course, it does not inexorably follow that the dominant Federal rule was in fact adhered to on a regular basis by New York State Judges confronted with motions to suppress. Differences in phrasing between CPL article 710 and rule 41 of the Federal Rules of Criminal Procedure (most notably, the explicit authorization in CPL 710.60 of allegations of fact based on information and belief), might arguably have supported the adoption by New York courts of a more permissive pleading approach.

In the absence of any reported New York court opinion then addressing the issue, and in the further absence of any showing in this record as to what had been the prevalent practice in the New York courts, it seems to us a reasonable hypothesis that some Judges followed the Federal practice and that others, perhaps in the interest of expedition, had followed a more permissive pleading approach. In this connection we note that the District Attorney had consented to a hearing for the codefendant Gillette on the basis of allegations which rested the claim of standing on information attributed to the prosecutor. On the other hand, in *People v Sutton (supra)* apparently the first reported opinion to address the issue, similar allegations had been found insufficient by a Trial Judge who had served for many years in Criminal Parts of the Supreme Court, and who enjoys a deserved reputation for his scholarly understanding of the criminal law.

The record is regrettably silent as to what, if any, had been the direct experience and observation of defendant's trial counsel, a criminal defense lawyer of many years experience, with regard to the response of motion Judges in New York courts to the problem of standing presented in this case. Since nothing in this record raises a question as to trial counsel's good faith, it seems a reasonable conclu-

sion that if counsel had any previous direct experience with the issue in a New York court, it had been consistent with his conclusion that defendant lacked standing under the circumstances presented. If, on the other hand, this case represented the first time trial counsel had been confronted with the issue, we are persuaded that he had a reasonable basis in the existing Federal authorities for the view that his client did not have standing to move to suppress items of property allegedly found on his person which he denied ever having owned or possessed.

A separate problem is presented by the issue when considered with regard to the gun which the defendant had allegedly thrown away during the course of his flight. Possession of a gun is, of course, a possessory crime, and one with which the defendant was charged in a count of the indictment. At least with regard to that count, defendant would have had standing under the then controlling automatic standing doctrine. It does not, however, follow from this that he would have had such standing to move to suppress the gun to the extent to which it could be offered in evidence against him on the principal robbery charge, a nonpossessory offense.

The rule had developed in the Federal courts that where automatic standing existed with regard to a possessory count in the indictment but not with regard to a nonpossessory offense, standing would be denied on the agreement of the prosecutor to dismiss the possessory charge. (*United States v Galante,* 547 F2d 733, cert den 431 US 969; *United States v Riquelmy,* 572 F2d 947; *United States v Penco,* 612 F2d 19.) The New York law on this issue was unclear. The opinion of the Court of Appeals in *People v Hansen* (38 NY2d 17) although not addressing the issue directly, included language (at p 23) which might arguably be interpreted as implying a different view. (But cf. *People v Gondolfo,* 94 Misc 2d 696.) However, in light of the clear Federal rule that had been developed in cases squarely addressing the issue, and in the absence of any directly contrary authority in New York cases, counsel would have been on strong ground in the view that even as to the gun the doctrine of automatic standing would be unavailing as to the principal count in the indictment.

Moreover, counsel could reasonably have believed that on a motion to suppress it would be held that the defendant lacked any constitutionally protected interest in the gun since he had abandoned it in the course of his flight. The later decision of the Court of Appeals in *People v Howard* (50 NY2d 583, revg 72 AD2d 503) an authority heavily relied upon by the defendant, in no way invalidates the reasonableness of such a judgment on the part of defense counsel at the time of this trial.

It is true that in *Howard* (*supra*) the majority of a closely divided Court of Appeals, in a factual situation comparable in some respects but different in others to that presented here, concluded (at p 593) that the hearing Judge was correct in a determination that the defendant's intent to abandon had not been established "on the facts of this case". Significantly, the court majority stressed (at p 593) that the property in question, variously described as a purse or a case, had been retained by the defendant "during the entire chase" and only dropped by him "while seeking to open or break down the door and window in the basement" in an effort to escape immediately before he was apprehended. In the instant case, the defendant had thrown the gun away at an intermediate point in his flight, some time and distance after he started to run and some time and distance before he was stopped, under circumstances not readily reconcilable with an intent thereafter to regain possession.

Far more strongly than in *Howard* (*supra*), the circumstances here support the conclusion that the defendant's action involved " 'a calculated risk' " rather than "a spontaneous reaction to the necessity of evading his pursuers". (See *People v Howard, supra,* at p 593; cf. *People v Boodle,* 47 NY2d 398, 404, cert den 444 US 969.) In short, the opinion of the court majority in the later decided *Howard* case would not impeach the reasonableness of an earlier legal judgment by defense counsel that his client had abandoned the gun, an issue technically distinct from that of standing but closely related to it. Nor is it without significance to an evaluation of counsel's competence that three Judges of the Court of Appeals found, as had this court, that an abandonment had been established even under the circumstances of the *Howard* case.

Undeniably, a troublesome question is presented by the hard fact that in this case a hearing had been granted to codefendant Gillette on the basis of a lawyer's affidavit that relied on information provided by the prosecutor. It is a partial answer to this, but not an entirely satisfactory one, that the record does not disclose that this defendant's counsel had read the motion papers filed on behalf of Gillette, nor does it disclose whether or not Gillette had admitted or denied to his attorney possession of the items allegedly secured from him. On balance, however, we are not persuaded that this disquieting aspect of the situation justifies a finding under all the circumstances that the failure to move to suppress violated defendant's constitutional right to adequate representation. Nor do we find any legal significance in the fact that the codefendant's motion to suppress was granted after a hearing, and the indictment against him thereafter dismissed, the facts in the record disclosing an obvious and significant difference between the codefendant's legal situation and that of this defendant.

Although not apparently cited by counsel as a consideration in his decision not to move to suppress, we think it relevant that he could reasonably have believed that a motion to suppress, even if the standing obstacle was overcome, had little chance of success. On this issue defendant once again relies heavily on the later decision of the Court of Appeals in *People v Howard* (*supra*). That reliance seems to us misplaced.

In sustaining the motion to suppress in *Howard* (*supra*), the majority of the Court of Appeals concluded (at p 592) that the flight of the defendant from a justified police inquiry, but one found not to be invited by indicia of criminal activity, was "an insufficient basis for seizure or for the limited detention that is involved in pursuit". Once again it is surely pertinent to an evaluation of the adequacy of defendant's representation that the three dissenting Judges of the Court of Appeals in *Howard* were of the view that the pursuit of the defendant when he fled justified the detention that thereafter took place and the accompanying search of the dropped vanity. Moreover, the possession in this case by defendant's companion of a jar of

pennies, at 1 o'clock in the morning, and his action in placing it on the sidewalk, following an apparent argument between the two and a third person, might reasonably have been viewed as representing the "indicia of criminal activity" that had been found absent by the Court of Appeals in *Howard,* and whose presence, in the opinion of the *Howard* majority, would have justified the police action.

Accordingly, the order of the Supreme Court, New York County (ROTHWAX, J.), entered April 11, 1983, which denied defendant's postjudgment motion pursuant to CPL 440.10 to vacate the judgment of the Supreme Court, New York County (MYERS, J.), rendered on September 7, 1977, convicting him of robbery in the first degree, assault in the first degree, and criminal possession of a weapon in the third degree, and sentencing him to concurrent indeterminate sentences of 12½ years to 25 years, 7½ years to 15 years, and 3½ years to 7 years imprisonment, respectively, should be affirmed.

MURPHY, P. J. (concurring). The evidence in this record indicates that defendant told his trial counsel that the police had not recovered any incriminating property from him. Based upon that representation, the defendant did not have standing to bring a motion to suppress. Upon this state of the record, it cannot be said that defendant was denied the meaningful assistance of counsel by trial counsel's decision not to bring a motion to suppress.

SULLIVAN and ASCH, JJ., concur with SANDLER, J.; MURPHY, P. J., and CARRO, J., concur in an opinion by MURPHY, P. J.

Order, Supreme Court, New York County, entered on April 11, 1983, unanimously affirmed.