THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* RONALD ANTHONY MUNOZ, Respondent.

First Department, January 29, 1973.

*Hugh Anthony Levine* of counsel (*Michael R. Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for appellant.

*Milton M. Rosenberg* (*Lawrence K. Feitell* with him on the brief), attorney for respondent.

CAPOZZOLI, J. Neither suspicious, nor equivocal behavior alone, justifies a search (*People* v. *Brown*, 24 N Y 2d 421; *People* v. *Corrado*, 22 N Y 2d 308), and the fact that defendant was actually in possession of narcotics does not change the illegal search into a legal one, because a search is bad or good when it starts and it is not made good by what is found. It clearly appears in this record that the defendant was not under arrest when the plastic bag was produced from the defendant's waistband and, therefore, the search cannot be defended as an incident to a lawful arrest. The cases cited in the dissent are not in point and they present factual situations unlike the facts in the case at bar.

The dissent calls attention to the fact that the Trial Judge expressly stated that he believed the testimony of the police

officer. As a matter of fact, we also believe it. But we conclude, as did the trial court, that, on the officer's own testimony, there was no probable cause to arrest, although there may have been suspicion. " A search, not authorized by consent or a search warrant, is deemed reasonable only if conducted as ' incident to a lawful arrest ' (*People* v. *Loria*, 10 N Y 2d 368, 373; see, also, *Beck* v. *Ohio*, 379 U. S. 89; *Rios* v. *United States*, 364 U. S. 253, 261–262; *Henry* v. *United States*, 361 U. S. 98, 100), and to effect such an arrest the arresting officers must have ' reasonable cause for believing ' that a crime has been committed and that the person arrested is the party responsible ''. (*People* v. *Malinsky*, 15 N Y 2d 86, 91.)

We share the same frustration which is apparent in the dissent, but the arguments advanced therein are better addressed to those who have it within their power to change the existing law. It is the function of this court to construe, apply and enforce the law as it exists and as settled by precedents of higher courts, even though the result reached may not meet with popular approval, nor even our own approval. Therefore, although the conclusion reached by the dissent might be a desirable one from the view of law enforcement, the fact is that we cannot make our own rules as cases come along. Until a change in the law is made by the higher courts, we are bound by the law as it exists now, and if it results in guilty persons escaping punishment, that is unfortunate, but, beyond our power to remedy, unless we were to treat binding precedents with disdain.

The order appealed from should be affirmed.

NUNEZ, J. (concurring). The highly experienced Trial Judge properly suppressed the evidence. If the facts were as stated by the dissent my vote would be to reverse and deny suppression. But the facts compel affirmance. There is not a word either in the record or briefs that: (1) the car was stolen as intimated by the dissenter, (2) defendant's behavior was evasive, (3) he was a stranger, (4) defendant was bent on mischief, (5) 137th Street and Riverside Drive, Manhattan, is a high crime area. The police officer in his testimony and the District Attorney in his brief, concede that there was no cause to believe that defendant either had committed a crime or that he was engaged in the commission of a crime before he was stopped nor was he acting suspiciously. He was questioned and searched at noontime without any reason whatsoever. The fact that the policemen's hunch resulted in the finding of cocaine does not justify the search. If we are to adopt the " proof of the pudding " principle, we should start by amending the Constitution and not by dis-

regarding it and overruling our Court of Appeals and the United States Supreme Court.

KUPFERMAN, J. (concurring). It is axiomatic that suspicion cannot substitute for probable cause, and I am therefore constrained to concur in sustaining the order of the Trial Judge.

I have heretofore expressed the frustration that the dissent delineates where technicalities are stretched to allow the obviously guilty to avoid due process; e. g., *People* v. *Carter* (39 A D 2d 537 [dissent]); *People* v. *Evans* (38 A D 2d 910 [concurring opn.]); *People* v. *Sullivan* (37 A D 2d 559, 562 [dissent], app. dsmd. 29 N Y 2d 937). Nonetheless, we must first maintain the foundation for our basic freedoms.

McGIVERN, J. (dissenting). I find the ultimate conclusion of the learned Trial Judge difficult to reconcile with his simultaneous finding that the officer's testimony was " credible " and " I believe everything he says " and the " the officer's [*sic*] actions justified suspicion ". Paradoxically, the majority avers that they too believe the police officer.

In my view, the totality of circumstances herein completely justified the arrest by a knowledgeable police officer and the subsequent search, which actually revealed packets of cocaine on the person of Munoz. Particularly, considering that defendant did not live in the neighborhood, a high crime area, the defendant's claimed ownership or control of the vehicle, the ownership of which was not explained, from which car a companion departed, leaving behind a white plastic bag reasonably taken to have all the outward aspects of narcotics, the fact he could not produce a license, registration or other identification; then there is the bulge in the front waistband of the defendant's trousers, and finally his evasive behavior. And the officer was no neophyte. He had taken courses at the Police Academy involving narcotics and had been involved in about 50 arrests for heroin. I cannot dismiss this entire factual street-scene complex as too tenuous a connection with the defendant as to render probable cause deficient.

" Probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. (See *Smith* v. *United States*, 358 F. 2d 833, 837 [BURGER, J.], cert. den. 386 U. S. 1008.) " (*People* v. *Tolentino,* 40 A D 2d 596 [1st Dept., September 26, 1972].) We have here not mere suspicion based on bare intuition or a wild surmise. We do have the educated judgment of an experienced police officer, based on a summary

of his observations and expertise, that he had probable cause for a search, the results of which justified the accuracy of his aroused judgment, or as the Trial Judge said " the officer's [*sic*] actions justified suspicion ".

In the eyes of a street–wise policemen on West 137th Street, Manhattan, at 11:00 A.M., he had probable cause to believe Munoz, a stranger, was bent on mischief, and considering the area, that he was in possession of narcotics. And he was right. (See *People* v. *Fenuta,* 39 A D 2d 674 and *People* v. *Meyers,* 38 A D 2d 484.) " But we will remember that what we are talking about is not the proof beyond a reasonable doubt required for the conviction of a crime but reasonable ground or probable cause for making a search, that is, observations or information sufficient to move a reasonable man to conclude that a crime is being committed or attempted." (*People* v. *White,* 16 N Y 2d 270, 273.)

The majority view is unrealistic and out of joint with the known conditions obtaining in certain sections of Manhattan today. Suppression of this evidence represents another gossamer and hypertechnical extension of constitutional safeguards resulting in a palpably wrong conclusion, serving no good purpose in our urban society. To the contrary. It makes society's efforts to stem the drug trade most difficult, and frustrates commendable police work, all because of an upside-down view of the defendant's rights, at variance with the background, history and original purpose of the Fourth Amendment. (See *People* v. *Qualls,* 29 N Y 2d 569; *People* v. *Corrado,* 22 N Y 2d 308; *People* v. *Rivera,* 14 N Y 2d 441, 445; *People* v. *Rosemond,* 26 N Y 2d 101, 104; *People* v. *Butterly,* 25 N Y 2d 159, 162–163; *People* v. *Meyers,* 38 A D 2d 484, *supra,* and *People* v. *Tolentino,* 40 A D 2d 596, *supra.*)

Lastly, I do not accept the view of the majority that the law in this area is static, held in the vise of precedents, so inflexible and procrustean as not to be swayed by creative thinking in tune with the flagrant realities of life in Manhattan today. " This Court should not be ignorant as judges of what we know as men " (*Watts* v. *Indiana,* 338 U. S. 49, 52).

Thus, I would reverse and deny defendant's motion to suppress the challenged evidence.

NUNEZ and KUPFERMAN, JJ., concur with CAPOZZOLI, J., in separate opinions; McGIVERN, J. P., dissents in an opinion.

Order, Supreme Court, New York County entered on April 3, 1972, affirmed.