Albert H. Buschmann, J.
By this special proceeding four licensed real estate brokers seek to vacate an order of respondent Secretary of State dated July 21, 1976 by which licensed brokers and salespersons are barred from soliciting for sale residential realty in the Counties of Kings and Queens.
The action was originally commenced in the Supreme Court, Albany County. By a decision of that court dated December 28, 1976, venue was changed to this county. The matter was submitted to the court in Special Term, Part 1 by way of a motion for summary judgment which was denied in a decision dated March 11, 1977, and by order of April 4, 1977 was set for trial. A series of applications were made to the Appellate Division, Second Department, and by an order of that court dated May 3, 1977 the parties were directed to proceed to trial. That trial was held before this court on June 7, 8, 9, 10 and 13.
At issue is the validity of an order of respondent Secretary of State dated July 21, 1976 which states, in pertinent part:
"that all licensed real estate brokers and salespersons are hereby restricted and shall cease and desist from soliciting listings of properties for sale and for purchase in any manner including but not limited to solicitation by means of letters, postcards, telephone calls, door-to-door canvassing, window signs, billboards, advertisement by handbills or news publications in the counties of Kings and Queens, except that brokers and salespersons may solicit listings of properties for sale and for purchase in newspapers of general circulation.
"That all solicitation be and is hereby prohibited until further notice.”
In response to concerns expressed by brokers, the respon *15 dent Secretary of State issued a letter dated August 3, 1976 containing a series of 21 questions and answers delineating and explaining the terms and conditions of the nonsolicitation order. It is clear from a reading of both of those documents that any form of advertising of property listed for sale with a broker was permissible. It is also clear that advertising of the existence of a brokerage office was permissible by means of "mass media”. What is restricted is solicitation of properties for sale by means of door-to-door canvass, telephone calls or bulk mailings to an area. It is the contention of respondent that the nonsolicitation order is the only realistic and effective means of preventing brokers from engaging in fear tactics generally known as "blockbusting” in order to generate a market for their own pecuniary benefit.
Petitioners allege that the order unduly restricts their activity, causing them economic hardship. They contend that respondent lacked the authority to issue the order in question; that he acted with insufficient information and without a public hearing and that, in any event, the order is an unconstitutional deprivation of their rights to due process and free speech.
With regard to the alleged lack of authority for respondent to issue the order in question, the court notes that on two recent occasions the Appellate Division of this department sustained that authority. (Heinemann Agency v Ghezzi, 49 AD2d 747; Thompson v Lomenzo, 48 AD2d 869.) Petitioners’ effort to distinguish these cases on their lack of cited authority is without merit. Even if this court disagreed with the conclusion, which it does not, it cannot ignore settled law in this department. (See People v Munoz, 40 AD2d 337, affd 33 NY2d 998.)
In the exercise of his authority in issuing the instant order, the court is aware of no statutory or departmental regulation requiring the respondent to hold a public hearing. In reviewing the efficacy of an agency regulation the court must determine whether the agency acted on a rational basis and whether its regulation was a reasonable exercise of its power. (Grossman v Baumgartner, 17 NY2d 345; see, also, Matter of Caplan v New York State Dept. of Taxation & Fin., Div. of Lottery, 32 NY2d 134.) The findings and reasons set forth by respondent in the preamble to the instant order if factually supported, provide a rational basis for his determination. Clearly, the secretary is concerned with the conduct of brokers *16 who, with little or no concern for the rights of others, apply undue pressure on homeowners in order to procure real estate for sale. The court, however, may not rely solely upon the findings of the secretary but must determine from the evidence presented whether there is evidentiary support for the factual findings made by him. Parenthetically, the use of public hearings in gathering the evidence necessary to support his conclusions may have been advisable in this instance. However, the court reiterates its conclusion that such hearings were not required and so long as the secretary’s findings are supported by evidence, they must be sustained.
In reviewing the evidence in this case the court is also mindful of the recent decisions of the United States Supreme Court relative to the protections accorded commercial advertising. (Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748; Hynes v Mayor of Oradell, 425 US 610; Linmark Assoc. v Township of Willingboro, 431 US 85.) The court in Virginia Pharmacy Bd. v Virginia Consumer Council (425 US 748, supra) laid to rest the notion that speech of a purely commercial nature was constitutionally unprotected. In reaching that conclusion, however, it is clear that the State may, in a reasonable exercise of its authority, place restrictions on forms of commercial speech. (Virginia Pharmacy Bd. v Virginia Consumer Council, supra, pp 770-773.) The time, place and manner of commercial speech may be regulated to serve a significant governmental interest where there remain ample alternative means of communication and so long as the restriction is without reference to the content of the regulated speech. (Virginia Pharmacy Bd. v Virgnia Consumer Council, 425 US 748, supra; see, also, Hynes v Mayor of Oradell, 425 US 610, supra.) The instant order cannot be said to fall within that category. The findings set forth in the preamble to the order clearly and unequivocally direct its import at certain types of information communicated. It is not merely an attempt to restrict or regulate the means of advertising but is intended to prevent the flow of certain information as such. The fact that the order applies only to one form of communication. does not transform this into a "time, place, or manner” case. (Linmark Assoc. v Township of Willingboro, p 94, supra.) Despite that fact, some form of restriction may still be constitutionally permissible. (Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, supra; Linmark Assoc. v Township of Willingboro supra, p 98.) In making the determi *17 nation as to whether the order in this context is constitutional and proper, the court must find that the secretary acted for a legitimate State interest to prevent improper or unlawful conduct and in the least restrictive manner possible.
In substance, the order is intended to bar brokers from inducing sales which would be destructive of any attempt to maintain racial-integrated communities. As valid as this cause may be, that alone cannot justify the order. (See Linmark Assoc. v Township of Willingboro, supra, p 96.) Of primary concern is the tactic used by some brokers, known as "blockbusting”. It is specifically forbidden by the secretary’s rules and regulations. It is there defined as any solicitation for the "sale, lease, or listing for sale or lease, of residential property on the ground of loss of value due to the presence or prospective entry into the neighborhood of a person or persons of another race, religion or ethnic origin”. (19 NYCRR 175.17.) Brokers are forbidden to "distribute or cause to be distributed material or make statements designed to induce a residential property owner to sell or lease his property due to such change in neighborhood.” (19 NYCRR 175.17.) Solicitation as barred by the order is a primary vehicle used in such illegal blockbusting activity. The secretary is acting in an area of unquestioned State interest. The conduct he is seeking to prevent is, at best, reprehensible and preys on the fears of individuals and is motivated solely by profit. It seeks to panic residential property owners and cause them to make judgments on Jtheir fears rather than upon rational concerns. It might be argued that the function of a broker is to make a market in real estate so that purchases and sales may be freely conducted. The market in residential realty, however, is not like that of securities, commodities or even commercial real estate. Generally, such realty is not held for investment. It is intended as a permanent living place for the owner. To permit brokers to attempt to make a market by whatever means they choose to employ, including the application of undue pressure, false advertising, rumormongering and fear spreading, is not only to sanction conduct which is detrimental to individual property owners but destructive to the fabric of society. If the secretary had acted upon evidence of widespread and wholesale conduct of such a nature in both counties and had sufficient evidence to *18 indicate that no action by him short of this wholesale restriction on solicitation would be effective, then the court has no doubt but that the order would be constitutionally valid. However, from the evidence presented it is clear that such conduct is taking place in certain specified areas within both counties but it has not been established that it is being conducted everywhere. Likewise it is conceded by the secretary that not all brokers are conducting such activity and there is no evidence to indicate the possible numbers of brokers in relation to the whole who may be dealing in this manner. The secretary’s concern that such conduct may become widespread if not controlled is probably legitimate. Unfortunately, the evidence presented to this court cannot sustain that conclusion.
When reviewing the evidence both from the constitutional standard and from the general review powers of this court in dealing with the State regulatory authorities, it appears that respondent’s order is too broad. Under the circumstances, the petition is granted. The court should note at this time that no question is raised as to prior nonsolicitation orders limited to certain specified areas. The determination here in no way affects the validity of those orders. Further, the court believes that the evidence presented by the secretary may have warranted a broad nonsolicitation order for a limited period of time to allow the secretary to gather sufficient evidence to determine whether the order in question should be continued for any extensive period of time. Accordingly, to allow the secretary sufficient opportunity to determine whether such investigations should be conducted and to further allow his office an opportunity to review its regulations in this regard, the effectiveness of the judgment to be entered hereon shall be stayed for a period of 60 days.