THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESUS OCASIO, Appellant.

First Department, July 24, 1986

---

## APPEARANCES OF COUNSEL

*James J. Hanrahan* for appellant.

*Douglas Harper* of counsel *(Roger L. Stavis* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

FEIN, J.

At about 3:00 A.M. on September 20, 1983, Officers Dardzinski and Biller, in uniform in a patrol car, observed defendant's car, one of several double-parked cars, on Southern Boulevard in The Bronx. The front windshield on the passenger side of the car was cracked. So far as appeared, there were no occupants in the car. Approximately two hours later the officers observed the same vehicle, this time with its motor running, and with defendant in the driver's seat and another person in the passenger seat. The car was stopped by the officers. Dardzinski testified: "I observed a car that was doubleparked and had a cracked windshield at the location of Southern Boulevard and Longwood Avenue. I approached the car from the driver's side, and my partner approached the car from the passenger side. I inquired of the driver, Mr. Ocasio, license, registration and insurance card. He complied with some of the papers. At that time I noticed a plastic bag protruding from underneath the driver's seat—partially protruding from underneath the driver's seat; I asked him what it was, he bent down and pushed it further underneath the seat. This aroused my suspicion, and I told him to place his hands on the steering wheel, I opened up the door of the car, went underneath the seat, pulled the white bag out and, felt the handle of a gun. I alerted my partner what I had found and he contained the individuals in the auto."

Defendant and the passenger were both searched and arrested.

It is undisputed that the officers had the right to approach the car to request documentation required to issue a summons for double parking and having a cracked windshield. It is notable that no summonses were issued for the other double-parked vehicles, and that the summons here was apparently issued after the arrest for the cracked windshield only.

The suppression court concluded that the inquiry regarding the contents of the plastic bag was justified in view of the time of night and the fact that the incident occurred in a so-called "high crime area". It may be inferred from such finding that if the same circumstances had occurred in an area not so characterized, the police conduct would have amounted to an unlawful intrusion, a violation of US Constitution 4th Amendment and NY Constitution, article I, § 12.

The suppression court's basis for determination was plainly

that the 4th Amendment and the State Constitution permit an inquiry as to the contents of any enclosed package within a vehicle which has been stopped for the sole purpose of a traffic violation, with the proviso that it may not be appropriate in areas other than those described as "high crime areas".

The dissenters go further. In essence, they conclude that the police have a right to inquire into the contents of any package within a vehicle stopped on the sole basis of a traffic violation and that the driver is required to respond or be subjected to a search and seizure.

Plainly, Dardzinski's actions constituted a search and seizure. The question is not whether the package was observed by the use of a flashlight or without a flashlight. It is curious that neither officer told the Grand Jury about the use of flashlights, although both testified to that effect at the *Mapp* hearing. There was plainly no foundation for any inquiry as to the contents of the package.

Dardzinski was asked whether, at the very moment that he approached the double-parked car and asked for identification papers, he had any suspicion that defendant was "involved in any criminal activity", to which he responded: "At that particular moment I would say no."

The testimony continued:

"Q: Did you ask him to produce any other papers?

"A: Other than his license, registration, insurance card?

"Q: Yes.

"A: I don't believe I asked him to produce anything else.

"Q: What did he produce; do you know?

"A: At that time I'm not sure.

"Q: And what was the next thing that happened?

"A: I observed a bag on the floor, partially protruding from underneath the seat of the car, the driver's side.

"Q: Now, the window was down; is that right?

"A: As I recall; yes.

"Q: And did you tell Mr. Ocasio to produce it from the automobile?

"A: At one particular point, yes * * *

"Q: Well, when you shone the flashlight, how much of this white plastic bag did you see?

"A: A portion of it.

"Q: About an inch?

"A: I would say a little more than an inch * * *

"Q: When did you observe a plastic cup holder?

"A: When I asked him what that was under the seat and when he did bend down and pushed the bag under the seat, he came up and showed me a plastic cup holder."

Biller's testimony was similar:

"Q: When you first observed the bag, were you suspicious that in this bag was some contraband? * * *

"A: No, it is possible.

"Q: Were you suspicious? In other words did you suspect that the bag that you saw contained drugs? a gun? a part of a body? or anything like that?

"A: No, no, sir.

"Q: As far as you were concerned it was an innocence [sic] looking bag, at that stage?

"A: At that stage, yes, sir."

Dardzinski's testimony on redirect was consistent:

"Q: Was there anything—was there something that one of the defendants did that raised your level of suspicion?

"A: When I asked—when I asked him about the plastic bag that was partially protruded from under the front of the seat, he pushed it as he reached down, he pushed it further under the seat of the car.

"Q: You asked Mr. Ocasio to present you with the bag; is that correct?

"A: As I recall, I believe I asked him what was the bag and what was in the bag.

"Q: Did he ever answer that question?

"A: No. . . . As I recall; no.

"Q: What did he do in response to that question?

"A: He pushed the bag further underneath the seat."

The suppression Justice and the dissenters concur that defendant was not obligated to answer the officer (*People v Howard*, 50 NY2d 583, 590-592, *cert denied* 449 US 1023). In *Howard* the police sought to question the male defendant who was crossing the street, carrying what appeared to be a woman's vanity case in an area which had a "high incidence of burglaries". The defendant ran off without answering the police. He was chased and caught. The bag contained a gun and drugs. Suppression was granted precisely because there was no obligation to answer the police questions. Describing

the defendant's conduct as "at best equivocal", the *Howard* court stated (50 NY2d, at p 590): "But while the police had the right to make the inquiry, defendant had a constitutional right not to respond. This is so both because the Fifth Amendment to the United States Constitution and its State counterpart (New York Const, art I, § 6) permitted him to remain silent and because the Fourth Amendment and its State counterpart (art I, § 12) protect him from detention amounting to seizure unless there is probable cause." Similarly, there was no obligation here to answer the question and no right to inquire concerning the bag's contents. There was nothing suspicious about the bag. The fact that this was a "high crime area" is not dispositive. Despite Justice Sandler's suggestion to the contrary, *Howard* (50 NY2d, at p 590) speaks to this very issue: "There was, therefore, basis for questioning defendant, but there was nothing that made permissible any greater level of intrusion. The officers had no information that a crime had occurred or was about to take place, had not seen defendant do anything criminal, and were confronted only by facts susceptible of innocent interpretation *(State v Saia,* 302 So 2d 869 [La], cert den 420 US 1008). Presence in an area of 'frequent burglaries' was an insufficient basis *(People v Schanbarger,* 24 NY2d 288, 291)."

*People v Cruz* (34 NY2d 362, 370), relied upon by the dissenters, lends no support to the view that a search of the bag was proper. In that case, the vehicle had stopped and blocked traffic. When the police officer approached and shone his flashlight about the interior of the car, he noticed a brown bag on the back seat behind the driver. There was further questioning of the driver because the registration was in the name of another. The driver explained that he intended to purchase the car from the registered owner when the latter returned from Puerto Rico in about two weeks. As the officer returned the papers to the driver, the passenger made a "sudden movement toward the brown bag on the rear seat" *(supra,* p 367). The officer then snatched the bag from his grasp and the passenger shouted "Be careful man, that's a bomb". Plainly, the sudden movement of the passenger to the bag and his announcement that it contained a bomb warranted the officer in opening the bag and examining its contents, which did indeed consist of a bombing mechanism.

This has nothing to do with our case. The dissenters suggest that the observation of a plastic bag, partially hidden, apparently under the seat, provided an "objective, credible reason"

to inquire what was inside, citing *People v De Bour* (40 NY2d 210). However, there is nothing in *De Bour* that suggests that the observation of a package, in a vehicle which has been stopped for a traffic violation, authorizes an inquiry into the bag's contents or an examination of the bag.

As *De Bour* states (40 NY2d, at p 216), "We have frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause *(People v Davis,* 36 NY2d 280; *People v Oden,* 36 NY2d 382; *People v Russell,* 34 NY2d 261; *People v Corrado,* 22 NY2d 308). It is equally true that innocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand. (Compare *People v Martinez,* 37 NY2d 662, and *People v Allende,* 39 NY2d 474, with *People v Singleteary,* 35 NY2d 528, and *People v Green,* 35 NY2d 193)."

The applicable principle is best stated in *People v Cantor* (36 NY2d 106), where the defendant actually drew the weapon out of his pocket. Suppression was granted because the prior action of the police constituted an unlawful seizure. As stated in *Cantor* (at p 110), "The threshold question is whether, on the facts of this case, there has been a search or a seizure. If there has been a search or a seizure, then its legality depends on the presence of probable cause or whether it fits within the narrow exception carved out by the Supreme Court in *Terry* v. *Ohio* (392 U. S. 1) and *Adams* v. *Williams* (407 U. S. 143) where forcible street encounters were found to have been properly initiated by the police and reasonable under the circumstances." The court continued (at pp 112-113): "Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime (CPL 140.50). Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand. (Compare Schwartz, Stop and Frisk: A Case Study in Judicial Control of the Police, 58 J. Crim. L. C. & P. S. 433, 445 with La Fave, 'Street Encounters' and the Constitution: Terry, Sibron, Peters, and Beyond, 67 Mich. L. Rev. 40, 70.) To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion. Vague or unparticularized hunches will not suffice *(Terry* v. *Ohio,* 392 U. S. 1, *supra; Wong Sun* v. *United States,* 371 U. S. 471, 479). Nor will good faith on the part of the police be enough to validate an illegal

interference with an individual (e.g., *Terry* v. *Ohio, supra; Henry* v. *United States,* 361 U. S. 98 * * * *Hill* v. *California,* 401 U. S. 797; *Smith* v. *County of Nassau,* 34 N Y 2d 18)."

That a white plastic bag with black printing on it was protruding one inch from under the car seat was not indicative of a crime and could not give rise to a reasonable suspicion of criminal activity. Nor is *People v Belton* (55 NY2d 49, *after remand by Sup Ct in* 453 US 454) of any aid to the People. In that case it was conceded and undisputed that the arresting officers smelled marihuana when they stopped the vehicle, thus evidencing a crime and not a traffic violation. The search which followed was to determine whether there was marihuana in the vehicle. The police observed two packets of the type in which marihuana is transported, on the floor in front of the driver's seat. The predicate for police action there was the odor of marihuana in the bags in question.

Instructive on the issue here is *People v Class* (63 NY2d 491, *revd and remanded* 475 US —, 106 S Ct 960), where the police officer had testified that as he looked into the car in an attempt to determine the vehicle identification number, he saw "a handle of a gun protruding from underneath the seat, seized it, and defendant was promptly arrested" (63 NY2d, at p 493). The Court of Appeals initially held that the State Constitution (art I, § 12) had been violated, stating (at p 496): "The facts reveal no reason for the officer to suspect other criminal activity or to act to protect his own safety (compare *People v David L.,* 56 NY2d 698, cert den 459 US 866). The sole predicate for the officer's action here was defendant's commission of an ordinary traffic infraction, an offense which, standing alone, did not justify the search (cf. *People v Marsh,* 20 NY2d 98)." After reversal by the Supreme Court on the ground that US Constitution 4th Amendment had not been violated, the Court of Appeals reiterated on remand that the police action had been violative of the State constitutional protection against unlawful search and seizure, and again ordered the physical evidence suppressed (67 NY2d 431).

It is notable that the dissenters disagree as to whether there was anything suspicious looking about the bag here, although Justice Asch asserts that the officer observed a "suspicious-looking bag in 'plain view' on the floor." The issue here is not whether the officer had a right to look inside the car, although such a right would be doubtful. *(People v Aquino,* 119 AD2d 464.) The question is whether he had a right to seize and examine the contents of the bag. There was no predicate for such

action, since there was no articulable basis to suspect criminal activity. Nor was there a necessity for the officer to proceed out of any fear for his own safety or that of his fellow officer *(People v Vidal,* 71 AD2d 962; *see, People v Marsh,* 20 NY2d 98).

The specter of danger to the police, raised by the dissenters, is without foundation in the record. The "tailored" response of the police "to nullify constitutional objections" *(People v Garafolo,* 44 AD2d 86, 88) is patently without credibility. If defendant indeed "pushed it further underneath the seat" and "came up and showed me a plastic cup holder", this provided no basis for a seizure and search of the nondescript bag protruding one inch from under the seat. To hold otherwise is to conclude that the police are entitled to learn by examination the contents of any package within a vehicle stopped for a traffic violation. *People v McNatt* (65 NY2d 1046, 1048), although not a traffic stop case, is plainly to the contrary, as is *Howard* (50 NY2d 583, *supra).*

The circumstances here justified the initial stop and inquiry, which were promptly complied with. There was nothing to make permissible any greater level of intrusion. *(People v McNatt, supra; People v Gonzalez,* 115 AD2d 73.)

The pertinent analysis is set forth in the concurring opinion of Justice Nunez of this court, in *People v Munoz* (40 AD2d 337, 338-339): "If we are to adopt the 'proof of the pudding' principle, we should start by amending the Constitution and not by disregarding it and overruling our Court of Appeals and the United States Supreme Court."

A search may not be justified by its avails. Hindsight is not to be used to abridge the vital constitutional safeguards against unreasonable searches and seizures *(People v Sobotker,* 43 NY2d 559, 565; *see, People v Allende,* 39 NY2d 474, 476).

The basic applicable principle is the Federal and State constitutional prohibition against unreasonable searches and seizures. The automobile exception, albeit necessary in the light of vehicular mobility, must not be permitted to swallow such constitutional safeguard in the guise of protecting the police, in the absence of evidence that they were in danger, or at least reasonably believed that they were in danger, under the circumstances. "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *(Coolidge v New Hampshire,* 403 US 443, 461-462.)

The judgment, Supreme Court, Bronx County (Nicholas

Figueroa, J.), rendered December 17, 1984, convicting defendant upon his plea of guilty of criminal possession of a weapon in the third degree and sentencing him to a definite term of imprisonment of 30 days to be followed by 59 months of probation, should be reversed, on the law and the facts, the sentence vacated, the motion to suppress physical evidence granted and the indictment dismissed.

SANDLER, J. P. (dissenting). I am in agreement with the conclusion reached in Judge Asch's dissenting opinion, and with the analysis set forth in that opinion. However, aspects of the majority opinion seem to me to raise issues of sufficient interest to merit further comment.

The majority opinion is clearly correct in its observation that there was nothing about the physical appearance of the plastic bag in the car that made it "suspicious". What made it an appropriate subject of police interest was the location of the bag in a car occupied by two people, under the driver's seat with only a small part visible. From the perspective of experienced police officers, part of whose duties are to make such evaluations, it was clearly reasonable for them to consider the possibility that the plastic bag had been hurriedly shoved under the driver's seat in an effort to conceal it from their view.

The surrounding circumstances disclose substantial support for the reasonableness of this assessment. This was a nighttime encounter involving a vehicle with a cracked windshield, that had been illegally double parked for some period of time, into which two persons unknown to the police officers had entered at 5 o'clock in the morning. The car was in what a police officer described as a "commercial high crime area".

The sharply critical comments in the majority opinion with regard to the hearing Judge's reference to the area as a high crime area seem to me entirely unwarranted. I agree that the term "high crime area" is capable of being improperly utilized in an attempt to justify what might otherwise be unjustifiable intrusions on individual constitutional rights. On the other hand, there are clearly circumstances in which the character of the neighborhood may realistically be considered by the police in evaluating the situation with which they are confronted.

In *People v Howard* (50 NY2d 583), a decision cited for other purposes in the majority opinion, the Court of Appeals specifically found justified the preliminary police inquiry in part on

the basis that the event occurred "[i]n an area beset by a high burglary rate" (at p 589). I see no more basis for criticizing the hearing court's reference to the police testimony as to the character of the neighborhood than there would have been for criticizing the very similar comment by the Court of Appeals in *Howard*.

Nothing in the foregoing discussion is intended to convey the view that there were sufficient indicia of criminal activity to have justified the police in stopping the vehicle apart from the traffic infractions that they described. What seems to me clear is that the police officers were justified in inquiring as to the contents of the partially concealed plastic bag under all the circumstances that were presented, at least as justified as was the police officer in *Howard (supra)* in undertaking to request information from the defendant with regard to the purse that he was carrying.

The real question here arises from the nature of the defendant's response to the inquiry, and whether that response, considered together with the relevant circumstances, justified the police action that was taken. This issue requires a consideration of the holding in *Howard (supra)*, a decision, in my opinion, that has been from time to time relied on for propositions that are not in fact set forth in it. In *Howard*, the majority of a closely divided court concluded that the flight of someone from police officers approaching him to make a justified inquiry did not give rise to probable cause justifying an arrest, in the absence of other indicia of criminal activity. Contrary to a widely held misunderstanding, the majority did not say that flight may not be considered as bearing on the appropriateness of police action. The precise words of the opinion were (at p 592): "Defendant's flight, had there also been indicia of criminal activity, would have been an important factor in determining probable cause".

In the immediate case, the defendant responded to the police inquiry by attempting to conceal the plastic bag that was the subject of the inquiry, and by attempting to deceive the police into believing that they had not seen what they had in fact seen. The officer responded by opening the car door, removing the plastic bag, feeling it, and upon feeling the handle of a gun, removing the gun and arresting the defendant. The specific legal question presented is whether the actions of the defendant in response to the police inquiry, taken together with the other circumstances, gave rise to a

reasonable suspicion on the officer's part that the plastic bag contained a weapon. (CPL 140.50 [3].)

In my opinion, the officers had a substantial basis for the belief that the plastic bag contained contraband. I think it a defensible proposition, although I do not reach that issue, that the action of the defendant in attempting to deceive the officer in response to his inquiry, taken together with the relevant circumstances, might well have established probable cause that the bag contained contraband sufficient to have justified an arrest. *(See, People v Moore,* 47 NY2d 911.)

As to whether the officer had a reasonable basis for the belief that the plastic bag contained a weapon, as distinguished from other contraband, I believe that a reasonably close question is presented. In light of the officer's testimony that he believed that the bag might have contained a weapon, when considered in light of the totality of the circumstances presented, I think there was an adequate basis for the hearing court's determination that the police action was justified.

As to the suggestion in the majority opinion that the right of the police officers to look into the car "would be doubtful", I should have thought that issue had been definitively determined by the decision of the Court of Appeals in *People v Cruz* (34 NY2d 362, 370). Wholly apart from that controlling authority, it seems to me plainly wrong for this court to inform police officers approaching a car under nighttime conditions in the circumstances disclosed in this record that they may not, as a matter of elementary precaution for their own safety, look into the car to see that which was available to be seen, and within reach of the person being questioned, to ensure that nothing was present that posed a danger to their safety.

Asch, J. (dissenting). On September 20, 1983, at approximately 5:00 A.M., Officers Dardzinski and Biller drove their marked police car eastbound down Southern Boulevard near Longwood Avenue, a location in the South Bronx. Both officers observed defendant and Jesus Martinez seated in a double-parked car with a cracked windshield on the passenger's side. A summons was issued to defendant for the cracked windshield. Officer Dardzinski asked defendant, who was the driver, to produce a license, registration and insurance card and defendant produced "some of the papers".

Officer Biller saw a white, plastic bag which lay on the floor near defendant's feet, partially under the seat, and told his partner, who looked, and, through the open window on the

driver's side, saw the bag "partially protruding from underneath the seat of the car" on the driver's side. Officer Dardzinski shone his flashlight at the bag and, believing "it could contain contraband or a gun", asked defendant what was inside the bag. Defendant responded by bending down, pushing the bag further underneath the seat, picking up a plastic cup holder from somewhere on the floor and holding up the plastic cup holder for the officer to see.

Officer Dardzinski told defendant to place his hands on the steering wheel and, with defendant in this position, the officer reached into the car, under the seat, and retrieved the bag. As Officer Dardzinski held the bag in his hand, he felt the handle of a gun through the bag. Both defendant and Mr. Martinez were arrested.

Criminal Term fully credited the testimony offered by the People's witnesses. The court noted that there was no dispute concerning the officer's right to approach the car to request the documentation required to issue a summons for double parking and having a cracked windshield, and noted also that a summons was actually issued after the arrest. The court ruled that the officer's inquiry regarding the contents of the plastic bag had been justified in view of the time of night and the high crime area, and denied defendant's motion to suppress the handgun and ammunition recovered.

Defendant claims that the officers' conduct was unreasonable because they had no cause to approach his car and question him and no cause to reach into the car and take the plastic bag.

In examining the propriety of police conduct under the 4th Amendment, this court must determine whether the action of the police was justified at its inception and whether that action was reasonably related in scope to the circumstances present (People v Cantor, 36 NY2d 106, 111). In the instant case, the action of the police satisfies this test.

The initial stopping of the car was entirely proper. Police officers may stop a vehicle, or approach a parked vehicle, when they reasonably suspect a violation of the Vehicle and Traffic Law (People v Ingle, 36 NY2d 413, 419-420). Since the officers observed defendant's car double parked (violation of Vehicle and Traffic Law § 1202 [a] [1] [a]) and bearing a cracked windshield (violation of Vehicle and Traffic Law § 375 [22]), they were entirely justified in approaching the car to issue a summons. In order to issue that summons, however, it

was first necessary to speak to defendant, who was the driver of the car, and inspect his driver's license, registration and insurance card.

In the course of speaking to defendant and examining his license and registration, Officer Dardzinski inadvertently observed a suspicious-looking bag in "plain view" on the floor. It is well settled that, since a motorist has no legitimate expectation of privacy in locations inside a car which are observable to passersby, it does not constitute a search for a police officer to peer into a car. *(See, Texas v Brown,* 460 US 730; *New York v Class,* 475 US —, 106 S Ct 960.)

Officer Dardzinski's visual inspection was not a search and it does not become a search simply because the officer shone a flashlight inside the car to augment the light provided by street lights. Indeed, it was entirely reasonable for the officers to use a flashlight to illuminate the inside of a double-parked car, at 5:00 A.M., where two males sat, with the engine running. *(See, People v Cruz,* 34 NY2d 362, 370 [shining a flashlight about the interior of a car which a police officer had stopped at 6:45 P.M. was proper].)

Having thus observed the plastic bag partially hidden under the seat, the officer clearly had an "objective, credible reason" to inquire what was inside. *(See, People v De Bour,* 40 NY2d 210.)* Although defendant was not obligated to answer the officer *(People v Howard,* 50 NY2d 583, 590-592), his response of bending over, pushing the bag further under the seat and showing the officer a cup holder instead, verified the officer's initial suspicion that the bag contained contraband or a weapon. At that point, facing a potentially dangerous situation, the officer was entirely justified in alleviating the potential danger by undertaking the limited, minimal intrusion of reaching into the car and retrieving the bag.

Protection of police and others can justify protective searches when the police have a reasonable belief that the suspect poses a danger to their safety. Such a search is permitted even where there is no probable cause for arrest *(Terry v Ohio,* 392 US 1, 24).

Investigative detentions in vehicles stopped for traffic violations are especially fraught with danger to police officers and may justify ordering passengers out of the automobile and frisking them for weapons *(Pennsylvania v Mimms,* 434 US 106) and the examination by the police of the contents of a closed container within the passenger compartment within the

reach of an arrestee *(New York v Belton,* 453 US 454, 460). In short, the police may "conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous" *(Michigan v Long,* 463 US 1032, 1051).

The facts set forth above, of two males seated in a double-parked car at 5:00 A.M. with the engine running, coupled with the extremely suspicious behavior of defendant upon the initial questioning by the police, in attempting to hide the plastic bag observed by the officer, justified the action of the officer in grabbing or securing the bag before the defendant could retrieve a possible (and here actual) weapon. As soon as the officer felt the outline of a gun through the plastic, he was clearly entitled to open the bag, look in, and remove the gun.

Accordingly, the judgment of the Supreme Court, Bronx County (Nicholas Figueroa, J.), rendered December 17, 1984, convicting defendant of criminal possession of a weapon in the third degree and sentencing him to a definite term of imprisonment of 30 days to be followed by 59 months of probation, should be affirmed.

CARRO and LYNCH, JJ., concur with FEIN, J.; SANDLER, J. P., and ASCH, J., dissent, each in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered on December 17, 1984, reversed, on the law and the facts, the sentence vacated, the motion to suppress physical evidence granted and the indictment dismissed.