OPINION OF THE COURT
Meyer, J.
An individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. Though the police officer may endeavor to complete the interrogation, he may not pursue, absent probable cause to believe that the individual has committed, is committing, or is about to commit a crime, seize or search the individual or his possessions, even though he ran away. Nor when the individual, cornered by his pursuers in the basement of a building and while looking for a way out of the basement, drops or throws a package he was carrying into a pile of junk, has he been shown to have intentionally abandoned the package so as to make a warrantless search and seizure permissible. The order of the Appellate Division should, therefore, be reversed, the motion to suppress should be granted and the indictment should be dismissed.
Indicted for criminal possession of a controlled substance in the first degree and criminal possession of a weapon in the third degree, defendant Howard moved to suppress the gun and drugs which formed the basis for the indictment. They had been taken from him by Officers Charles Hanley and *587 Cornelius Brosnan, who on the day of the seizure were on anticrime patrol in The Bronx in plainclothes and in an unmarked automobile. At about 1 p.m., in broad daylight, on University Avenue in the vicinity of Father Zeiser Place (an area which had a high incidence of burglaries), the officers observed Howard crossing University Avenue diagonally in a southeasterly direction. Their curiosity was aroused by the fact that defendant was carrying what appeared to be a woman’s vanity case. As they passed defendant, both officers saw him look over his shoulder in their direction, in a manner described by Officer Hanley as "furtive”. Defendant looked in the direction of the car two or three more times until he reached the center of University Avenue. Then as Hanley pulled the car to the right side of the street, defendant reversed direction, walked to the west side of the street and proceeded south on the sidewalk.
The police car made a U-turn and once again the officers saw defendant look in their direction. As the car neared him, defendant’s pace quickened. As the car came parallel with defendant, Officer Brosnan displayed his police shield and said "Police Officer. I would like to speak to you.” Though looking directly at the officers, defendant ignored them and continued walking south. The police followed and at the next opening between parked cars, Brosnan repeated the same words, and began to get out of the car. Defendant, without saying anything, started to run, holding the vanity case to his chest like a football would be held. The officers pursued and were joined in the chase by Victor Dragaj, a college freshman. Defendant proceeded over an iron fence, through an alleyway and into the basement of a building, at which point, pursued by Dragaj, defendant threw the vanity case into a pile of junk in the corner and sought but was unable to escape through a door which was locked, or a small window on the far side of the room. Dragaj restrained defendant and was joined by Officer Brosnan, who asked defendant why he had tried to get away. About 25 seconds later they were joined by Officer Hanley, who identified himself as a policeman and asked about the vanity case or box. Dragaj pointed to it and Hanley retrieved it from the rubbish pile, which was beyond defendant’s reach, and immediately opened it, revealing a .38 caliber revolver and heroin in glassine envelopes. Hanley then placed defendant under formal arrest.
Criminal Term granted defendant’s motion to suppress, *588 concluding that defendant’s flight could not escalate suspicion to anything more, that even if defendant’s flight made a stop and frisk permissible the officers went beyond the allowable scope of CPL 140.50 since defendant was no threat to the officers’ safety and the vanity case was outside the grabbable area, and that there had been no abandonment. The Appellate Division reversed on both grounds, "on the law and the facts” (65 AD2d 714). Since reversal was not on the law alone defendant’s application for permission to appeal was dismissed (46 NY2d 1080). Howard then pleaded guilty to criminal possession of a controlled substance and appealed as permitted by CPL 710.70 (subd 2). The Appellate Division having affirmed, without opinion (72 AD2d 503), leave to appeal was granted by a Judge of this court (48 NY2d 801).
Defendant argues that there was no justification for police action of any kind; that in any event he had a constitutional right to refuse to answer a police inquiry; that his exercise of that right by walking and then running away did not justify detention of him or seizure of the vanity case; and that as a matter of law there was no abandonment. While we hold that there was a sufficient basis to permit inquiry, we agree that defendant had the right not to answer, that his running did not, absent any indication that any crime had been or was about to be committed, permit detention; that there was no probable cause for defendant’s arrest; and that the vanity case had not been abandoned.
As we have recently had reason to reiterate in People v Belton (50 NY2d 447), "[t]he privacy interest of our citizens is far too cherished a right to be entrusted to the discretion of the officer in the field.” That privacy interest is protected by the mandate of the Fourth Amendment to the United States Constitution and section 12 of article I of our State Constitution both of which, in identical language, state: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated.” It is protected as well by CPL 140.50, which outlines when a police officer may stop and search persons in a public place,[1] and by decisional law expounding the common *589 law and interpreting the constitutional and statutory safeguards.
The principles that have evolved seek to balance society’s interest in the detection and prevention of crime and in the protection of the lives and safety of law enforcement officers with the interest of individuals in living their lives free from governmental interference. Therefore, whether there has been an unreasonable breach of legitimate expectations of privacy involves consideration of (1) the nature and scope or severity of the interference with individual liberty, (2) the public interest served, and (3) the objective facts upon which the enforcement officer relied, in light of his knowledge and experience (see United States v Mendenhall, 446 US 544, 560 [Powell, J., concurring]; see, also, Brown v Texas, 443 US 47, 50-51; Dunaway v New York, 442 US 200, 211-214; Delaware v Prouse, 440 US 648, 654-655; Terry v Ohio, 392 US 1, 20-22, which it is argued affect the classifications we enunciated in People v De Bour, 40 NY2d 210).
We have no difficulty in concluding that the officers’ request for information from defendant was justified under those criteria. In an area beset by a high burglary rate defendant was seen carrying a woman’s vanity case by the officers, one of whom testified that it was not uncommon for a burglar to carry away loot in his victim’s luggage. Considering those facts together with defendant’s numerous glances at the officers’ car, his change of direction and his quickened pace, we conclude that, though the carrying by a man of a woman’s purse does not constitute probable cause (People v Davis, 36 NY2d 280, cert den 423 US 876) and though defendant could, the car being unmarked and the officers in plainclothes, have acted evasively out of fear for his own safety, the circumstances constituted a sufficient basis* [2] for the inquiry made, *590 which of itself constituted no more than a minor inconvenience to defendant (Davis v Mississippi, 394 US 721, 727, n 6, and cases cited, infra, p 591; see 3 La Fave, Search and Seizure, § 9.2).
There was, therefore, basis for questioning defendant, but there was nothing that made permissible any greater level of intrusion. The officers had no information that a crime had occurred or was about to take place, had not seen defendant do anything criminal, and were confronted only by facts susceptible of innocent interpretation (State v Saia, 302 So 2d 869 [La], cert den 420 US 1008). Presence in an area of "frequent burglaries” was an insufficient basis (People v Schanbarger, 24 NY2d 288, 291); in this day of unisex haircuts and clothing, the carrying of a woman’s vanity case was at best equivocal (People v Davis, 36 NY2d 280, cert den 423 US 876, supra; cf. People v Lakin, 21 AD2d 902); and defendant’s "furtive” movements (repeated glances, change of direction, quickened pace) were, the car being unmarked and the officers not in uniform as already noted, at best ambiguous (cf. People v Batista, 68 AD2d 515, 517; People v Towers, 49 AD2d 839; see Search and Seizure: "Furtive” Movement or Gesture as Justifying Police Search, Ann., 45 ALR3d 581, 600). The circumstances justified the inquiry made and would have justified the officers in keeping defendant under observation (People v Sobotker, 43 NY2d 559, 564) but were not a predicate for anything more (cf. Dunaway v New York, 442 US 200, 211-214, supra; Sibron v New York, 392 US 40, 64).
But while the police had the right to make the inquiry, defendant had a constitutional right not to respond. This is so both because the Fifth Amendment to the United States Constitution and its State counterpart (New York Const, art I, § 6) permitted him to remain silent and because the Fourth Amendment and its State counterpart (art I, § 12) protect him from detention amounting to seizure unless there is probable cause. As Mr. Justice Brandéis put it long ago in Olmstead v United States (277 US 438, 478), defendant had "the right to be let alone.”
There are surprisingly few cases explicitly so holding, probably because few individuals feel they can walk away or refuse to answer (see Illinois Migrant Council v Pilliod, 398 F Supp *591 882, 899, affd 540 F2d 1062, on reh 548 F2d 715; ALI Model Code of Pre-Arraignment Procedure [1975], p 257). No New York appellate opinion has dealt with the subject other than as it is touched upon inferentially in general discussion of the right to remain silent (e.g., People v Conyers, 49 NY2d 174), but it has been passed upon at Criminal Term and in out-of-State cases and legal commentaries. Thus, People v Burns (91 Misc 2d 1080, 1086 [Goldfluss, J.]), held that "What sets this Nation apart from others is that its system of criminal prosecution is accusatorial, not inquisitorial. A citizen may, if he so chooses, exercise the right to demand that the police secure evidence of his guilt from other sources than from out of his own mouth,” and in People v De Fillippo (80 Mich App 197, 202, revd on other grounds sub nom. De Fillippo v Michigan, 443 US 31) the Michigan Court of Appeals held that "While police may under certain circumstances intrude upon a person’s privacy by stopping him and asking questions (Terry v. Ohio, 392 U. S. 1; 88 S. Ct. 1868; 20 L. Ed. 2d 889 [1968]), there can be no requirement that the person answer.” In support of that holding the Michigan court cited the reference in Davis v Mississippi (394 US 721, 727, n 6) to "the settled principle that while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer.” Supporting authority is to be found in cases defining "seizure” by whether the individual interrogated had lost his "equal right to ignore his interrogator and walk away” (Terry v Ohio, 392 US 1, 33 [Harlan, J., concurring]; see, also, 392 US, at p 16 [majority opn]; 392 US, at p 34 [White, J., concurring]; accord United States v Mendenhall, 446 US 544, supra [Stewart, J., in opn in which Rehnquist, J., joined and with which Burger, Ch. J., Powell and Blackmun, JJ., did "not necessarily disagree”]). Other cases and authorities conceptually in accord with our holding are United States v Price (599 F2d 494); United States v Wylie (569 F2d 62, cert den 435 US 944); Commonwealth v Ellis (233 Pa Super 169); State v Tsukiyama (56 Hawaii 8); State v Evans (16 Ore App 189); People v Ortiz (18 Ill App 3d 431); Amsterdam, Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and the Like (3 Grim L Bull 205, 228).
Nor can the failure to stop or co-operate by identifying oneself or answering questions be the predicate for an arrest *592 absent other circumstances constituting probable cause (People v Samuels, 50 NY2d 1035; People v Berck, 32 NY2d 567, 574, cert den 414 US 1093; Brown v Texas, 443 US 47, supra; ALI Model Code of Pre-Arraignment Procedure [1975], p 300; but see 1 La Fave, Search and Seizure, § 3.6, subd [f], pp 673-675). This is because the failure to answer "cannot constitute a criminal act” (People v Schanbarger, 24 NY2d 288, 292, supra).
. That does not mean that the police in furtherance of their duties may not continue observation provided that they do so unobtrusively and do not limit defendant’s freedom of movement by so doing. Defendant’s flight, had there also been indicia of criminal activity, would have been an important factor in determining probable cause (Sibron v New York, 392 US 40, 66, 67, supra; People v Kreichman, 37 NY2d 693, 699; People v Dread, 49 AD2d 401, affd 41 NY2d 871; People v Schneider, 58 AD2d 817, 818), but where, as here, there is nothing to establish that a crime has been or is being committed, flight, like refusal to answer, is an insufficient basis for seizure or for the limited detention that is involved in pursuit (Brown v Texas, 443 US 47, 50, supra; Sibron v New York, supra; Wong Sun v United States, 371 US 471; People v Kreichman, 37 NY2d, at p 699, supra; State v Finklea, 313 So 2d 224 [La]; 1 La Fave, Search and Seizure, § 3.6, subd [e], p 669; ALI Model Code, p 298 ["The factors of flight and concealment are also attenuated to the point where they will not alone justify an arrest in cases where there is little or no probability that a crime has been committed”]). The circumstances existing at the moment defendant Howard was seized by Officer Brosnan did not constitute probable cause for arrest. The opening of the vanity case cannot be justified as incident to a lawful arrest, nor since it was as the Trial Judge found outside the grabbable area can it be justified under CPL 140.50 (subd 3). The contents of the vanity case must, therefore, be suppressed unless defendant abandoned it.
Property which has in fact been abandoned is outside the protection of the constitutional provisions (People v Pittman, 14 NY2d 885; People v Lopez, 22 AD2d 813; People v Prisco, 61 Misc 2d 730). We do not find it necessary to consider whether the facts of this case bring it within the concept of police action short of illegal seizure but sufficiently coercive to nullify an abandonment for Fourth Amendment purposes (see 1 La Fave, Search and Seizure, § 2.6, subd [b], pp 372-374; cf. *593 Commonwealth v Barnett, 484 Pa 211), for we agree with the hearing Judge that intent to abandon cannot be found on the facts of this case.
Whether there was an abandonment is partly a matter of property law but essentially a question of constitutional law. There is a presumption against the waiver of constitutional rights. It is the People’s burden to overcome that presumption by evidence of " 'an intentional relinquishment or abandonment of a known right or privilege’ ” (Brookhart v Janis, 384 US 1, 4; Johnson v Zerbst, 304 US 458, 464; People v Whitehurst, 25 NY2d 389, 391). The proof supporting abandonment should "reasonably beget the exclusive inference of the throwing away” (Foulke v New York Cons. R. R. Co., 228 NY 269, 273, quoted with approval in United States v Cowan, 396 F2d 83, 87). So concealment in a trash can does not constitute an abandonment (Work v United States, 243 F2d 660, 662; State v Chapman, 250 A2d 203, 212 [Me]).
As the hearing Judge noted, the act of defendant in holding on to the case during the entire chase belies intention to abandon. Since Dragaj and the police were in hot pursuit, it cannot be found that defendant’s act in dropping or throwing the case in the corner while seeking to open or break down the door and window in the basement was an act "involving a calculated risk” rather than a spontaneous reaction to the necessity of evading his pursuers (see People v Boodle, 47 NY2d 398, 404, cert den 444 US 969) or that he purposefully divested himself of possession of the vanity case.[3] Under those circumstances he cannot be said to have knowingly waived his constitutional protection against warrantless search of the case.
For the foregoing reasons, the order of the Appellate Division should be reversed, the motion to suppress should be granted and the indictment should be dismissed (see Matter of Forte v Supreme Ct. of State of N. Y., 48 NY2d 179).

. CPL 140.50 (subds 1, 3) read, in pertinent part:
"1. [A] police officer may stop a person in a public place ** * * when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor * * * and may demand of him his name, address and an explanation of his conduct.
* * *
*589 "3. When upon stopping a person under circumstances prescribed in [subdivision] one * * * a police officer * * * reasonably suspects that he is in danger of physical injury, he may search such person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. If he finds such a weapon or instrument, or any other property possession of which he reasonably believes may constitute the commission of a crime, he may take it and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.”

. While Officer Brosnan conceded that he was "curious as to what was in the bag,” his inquiry cannot be said to have resulted from "mere whim, caprice or idle curiosity” (People v De Bour, 40 NY2d, at p 217, supra) in light of the other *590 circumstances, nor is there any indication that it was "undertaken with intent to harass” (id.).

. (Cf. Walter v United States, 447 US —, n 11, 48 USLW 4807, 4810, n 11.)