■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALI M. MUHAMMAD, Appellant.—Judgment unanimously reversed, on the law, defendant's motion to suppress granted, and defendant remanded to Onondaga County Court for further proceedings on the indictment. Memorandum: Defendant

entered a plea of guilty to burglary in the third degree following denial by the suppression court of his motion to suppress physical evidence seized from him at the time of his apprehension (see, CPL 710.20 [1]). It was error to deny the motion.

At the hearing, Police Officer Zimmer testified that while he was on patrol in a police vehicle, he observed defendant and another male walking down Van Buren Street in a high-crime area of Syracuse at about 6:00 A.M. on July 6, 1983; that defendant was carrying a large brown paper bag, which had wet spots and large holes in it; that through the holes he saw several bottles of beer and some unopened packs of Newport cigarettes; that the men were drinking beer, or holding open beer bottles; that as he drove by, the men's eyes followed his vehicle; that he stopped the vehicle, approached the men and asked where they were coming from, but neither responded; that he asked what was in the bag and that defendant said "I need another bag. This one has got holes in it"; that defendant set the bag on the ground and shortly thereafter removed from it another paper bag and ran from the scene. Officer Zimmer then testified as follows:

"A. At that time, I ran after Mr. Muhammad. I had my police walkie with me and I radioed I had a possible suspect I was chasing and the direction of travel, and another officer responded to the scene.

"Q. And to your knowledge, was Mr. Muhammad apprehended a short distance away?

"A. Yes, he was.

"Q. Where was he caught do you know?

"A. In the 500 block of Burt Street.

"Q. And the paper bag that he was carrying that he ran off, the smaller paper bag, was that recovered?

"A. Yes, it was.

"Q. And do you know what the contents of that bag were?

"A. Approximately $187 in change, primarily quarters and a couple of licensing tags."

In denying suppression, the court relied on the police officer's duty to stop defendant and his companion because they were in violation of the Syracuse Open Container Law, and concluded that "the action of defendant thereafter resulted in the discovery of the proceeds of the burglary * * * It was a stopping with good probable cause and fully justified under the circumstances."

We agree that the initial intrusion, limited as it was to two questions asked by Officer Zimmer in order to gain explanatory information, was permissible *(see, People v Carrasquillo, 54 NY2d 248; People v Howard, 50 NY2d 583, cert denied 449 US 1023)*. Even assuming, however, that defendant carried an open beer bottle or was drinking beer, the officer would not have been authorized to frisk or search defendant for a suspected violation of an ordinance *(People v St. Clair, 80 AD2d 691, affd 54 NY2d 900)*. Moreover, the Court of Appeals has ruled that absent probable cause to believe that criminal activity is at hand, a person's constitutional rights include the freedom to run from an officer who has made inquiries of him and that such flight may not be used as a predicate for any further intrusion *(People v Howard, supra)*. Where, however, the police have evidence of a violation coupled with flight, a precautionary search to ensure the safety of the officer may be permissible *(People v King, 65 NY2d 702)*.

Here, accepting the finding of the suppression court that defendant was violating the Syracuse Open Container Law, the question presented is whether that violation, coupled with defendant's flight, justified whatever intrusion was made upon defendant at the time of his apprehension and the seizure of the money and licensing tags. Since the police officer who apprehended defendant did not testify at the suppression hearing, the answer is not to be found in this record. The only information that the apprehending officer could have had was that Officer Zimmer was chasing "a possible suspect". We do not know how or why defendant was apprehended; whether he was frisked or searched upon apprehension; the location of the seized evidence at the moment of its seizure from defendant; whether there was a basis to conclude that a precautionary frisk was required, if, in fact, such a frisk was undertaken; or whether defendant was arrested at the time of his seizure, and if so, for what crime or violation. It appears that defendant was not charged with, or cited for, a violation of the Open Container Law, and since, at the time of the seizure, the police were unaware that a burglary had been committed, he could not have been arrested for the burglary. Finally, there is no indication in the record that the money and licensing tags seized from defendant were obvious contraband, the mere possession of which would have provided a basis for defendant's arrest *(see, People v King, 65 NY2d 702, supra)*.

While the burden of demonstrating illegality of a search and seizure is upon the defendant, the People nevertheless have the burden of going forward to show the legality of the

police conduct in the first instance *(People v Berrios,* 28 NY2d 361, 367-368; *People v Whitehurst,* 25 NY2d 389, 391; *People v Malinsky,* 15 NY2d 86, 91, n 2). That burden was not met and defendant's motion to suppress must be granted. (Appeal from judgment of Onondaga County Court, Cunningham, J.—burglary, third degree.) Present—Dillon, P. J., Callahan, Boomer, Green and Schnepp, JJ.