OPINION OF THE COURT
Lewis L. Douglass, J.
The arresting officer testified that while on patrol in plain clothes in an unmarked car, he heard a call over his radio that a black male with a high haircut had robbed a woman on East Fifth Street. Other cars would have heard the same radio call.
As he proceeded to the location he heard a second radio call that the suspect was wearing a white shirt. As he was proceeding to the street where this episode was occurring he could hear radio calls from other police cars who were also converging on the location.
*1048 Within five minutes of the first call, one man was stopped and released. The chase for the robber continued involving several other cars. He heard another radio transmission, which now included the fact that the suspect was carrying a cake. He next saw a marked police car with its lights on, pursuing a man who ran down an alley. He then drove to the point where he knew the alley terminated, expecting to catch the person as he came down the alley. He exited his car and started jumping over fences that separated the back yards. As he was pursuing in that manner he saw a man sweating, out of breath, crouched under bushes. There were six to eight other officers behind him.
The question raised by the defense is whether the police officer, under these circumstances, could arrest this man and hold him until the victim and another eyewitness arrived to confirm that they had arrested the right man. The answer to the question becomes clear by simply noting how wholly unreasonable it would be to suggest that under these circumstances the officer should have ignored the man who was hiding under the bushes. The defendant argues that as a Trial Judge this court is bound by People v Howard (50 NY2d 583), which seems to recognize the right of people to run away and also suggests that flight is not indicative of criminal activity.
The defense misreads Howard (supra). Howard deals with flight where there is no other indication of criminal activity. In Howard the defendant is walking on the street, sees the police and runs. It is well established however, that where there is some other indication of criminal activity, a radio run or a citizen crying out "Fve been robbed”, coupled with flight, that is clear evidence that criminal activity is afoot. (See, People v Allen, 141 AD2d 405.) Here, the officers had at least three calls from citizens to 911 describing the crime and the robber. Those calls coupled with flight clearly established that criminal activity was afoot and the officers had the right to make reasonable inquiry. (People v De Bour, 40 NY2d 210.)
Moreover, analysis of the exclusionary rule begins with the recognition that, "the standard to be applied is that of reasonableness, the touchstone of the Fourth Amendment * * * '[i]t must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.’ ” (People v Finlayson, 76 AD2d 670, 675.)
In order to protect citizens from "unreasonable” searches *1049 the courts developed the exclusionary rule, whose primary purpose is the deterrence of future unlawful police activity, even if the price for deterring the future unlawful activity means that a criminal will go free. People v Drain, 73 NY2d 107.) The test of what is unreasonable, i.e., what conduct is so unlawful that it is better that a criminal go free, rather than permit repetition of the conduct, is not determined against the calm of a courtroom, but rather in making the determination of what is reasonable the law deals with "not technicalities]” but with "practical considerations of everyday life”. (Brinegar v United States, 338 US 160,175.)
Following the arrest of the defendant the officers radioed to other cars, to bring the complaining witness and the eyewitness who were riding in other cars involved in the chase to the point of the arrest, to make an identification. The complaining witness and the eyewitness arrived at the scene within minutes of each other. It is now well established that when police officers make an arrest based on probable cause, they may either bring the complainant to the point of arrest or even take the arrested person back to the complainant to be sure that they have arrested the right person. People v Hicks, 68 NY2d 234.) And, certainly the same rationale would apply to an eyewitness who happens to be on the street.
Thus, I find nothing improper about the identification by either the eyewitness or the complaining witness.
Defendant’s motion is denied in all respects.