Bellacosa, J.
(dissenting). I respectfully dissent and vote to affirm the order of the Appellate Division.
People v Martinez (80 NY2d 444), in which I fully concur, applies New York’s common-law governing framework for police-civilian street encounters in a People v Howard (50 NY2d 583, cert denied 449 US 1023) context. Martinez focuses on the third level of People v De Bour (40 NY2d 210), the forcible stop and detention, and makes an important clarification of Howard. The instant case deals with the second level, the common-law right of inquiry in an analogous police-civilian street encounter involving a vehicle.
Here, the police officers pulled up in a police radio car behind a parked car sometime after 2:30 a.m. on a deserted street in Manhattan known for criminal drug activity. They had turned on their turret lights and spotlight. The parked *729 car then started to pull away from the curb, with the officers following for 10 to 20 feet. By loudspeaker, the officers directed defendant to "[p]ull the vehicle over”. The officers approached the car and simply asked defendant for his license, registration and insurance card. The police kept their weapons bolstered. The vehicle was soon determined to have been stolen in Queens a few weeks before.
As the Court stated in De Bour, the common-law right of inquiry is "activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a police [officer] is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure” (People v De Bour, 40 NY2d, at 223 supra). I agree that at the point in time when the police used the loudspeaker to order defendant to pull the car over, they had only a founded suspicion that criminal activity might be afoot and, therefore, only the common-law right of inquiry was activated. I believe, however, that the order "to pull over” and the brief, ordinary inquiry addressed to the motorist was "short of a forcible seizure” under our pertinent precedents for the purposes of the issue to be decided in this case. The conduct of the officers, among the range of options available in the given circumstances, did not violate the "overriding requirement of reasonableness” (see, id., at 218). Moreover, reversal in this case may engender new confusion and squeeze the commonsense meaning out of the common-law right to inquire where the individual to be inquired of happens to be in a vehicle. I would, therefore, affirm the order of the Appellate Division.
To be sure, People v Ingle (36 NY2d 413) and People v Sobotker (43 NY2d 559) establish the rule that where the police stop a car moving freely in traffic on a highway, that stop will constitute a "limited seizure within the meaning of constitutional limitations” (People v Ingle, supra, at 418 [emphasis added]). However, those cases are distinguishable from this situation and do not purport to govern or resolve the precise question presented by this case. In significant contrast to those cases, the officers here lawfully and appropriately approached defendant’s car while it was standing still. When it started to move away, the officers followed for only a few feet. One is left to wonder what the result in this case would be if, instead of the standard "pull over” direction, the officers had politely announced, "Please don’t pull away. We wish only to conduct a common-law inquiry and not effect even a *730 partial seizure” (compare, People v Hollman, 79 NY2d 181, 191).
Given the significant distinguishing features between this case and Sobotker (43 NY2d 559, supra), the Court appears to be embellishing the "limited” Sobotker/Ingle principle. An unlimited, bright line test emerges as the key feature of this case that whenever and in whatever circumstances the police attempt to circumscribe the movement of a vehicle, the police action constitutes a "seizure” for all purposes. The lesser common-law right to inquire consequently decomposes into fossilized lifelessness.
At the very least, this latest twist of the operating principle in this environment thrusts the common-law right to inquire into confusion with respect to police-civilian street encounters involving vehicles. Indeed, the practical implementation compelled by this case is likely to produce results which conflict paradoxically with parallel situations involving foot chases, as in People v Howard (50 NY2d 583, supra), which the Court seeks to regularize today in Martinez (see, 80 NY2d 444, 447-448, supra).
In sum, I agree with the majority at the Appellate Division that the police owed a duty to the public to initiate a common-law inquiry in this case. The officers did nothing unlawful, unreasonable, uncalled for or unconstitutional. The police should have the right to reasonably, peacefully and safely secure a potentially very dangerous situation like this while they do their jobs (see, e.g., People v Torres, 74 NY2d 224, 232, 235-236 [dissenting opn]). The circumstances here were certainly suspicious and the police were attempting to conduct a concededly permissible standard motorist inquiry. An artificial, unrealistic ritual that frustrates their authorized work and forces them instead to allow a vehicle to accelerate and proceed into a potentially more dangerous and volatile high-speed chase or other encounter by possibly joining other vehicular and pedestrian traffic is not within the rule of reason or this Court’s precedents.
Acting Chief Judge Simons and Judges Kaye, Titone and Hancock, Jr., concur in memorandum; Judge Bellacosa dissents and votes to affirm in an opinion; Judge Smith taking no part.
Order reversed, etc.