OPINION OF THE COURT
Lawrence Donohue, J.
*360 The defendant moved for omnibus relief. Pursuant to the decision dated January 16, 2003, a Dunaway and Mapp hearing was held. The defendant has been charged with Penal Law § 265.01 (4), criminal possession of a weapon, disorderly conduct, harassment and two counts of resisting arrest.
At the hearing, a police officer testified that he responded to a call of a domestic dispute. When he arrived at the location, the sister of the wife of the defendant was out on the street. The sister reported that the defendant slapped his wife and then both of them left in his car. The car was returning to the house, but the defendant saw the police car, made a U-turn and drove away. The officer followed the car as it slowly circled a block. The officer then pulled over the car. The defendant was arrested but had to be subdued in order to be handcuffed. The wife was also taken into custody. She stated that she did not want the defendant prosecuted.
At the precinct, the police completed the domestic violence report. The wife indicated that the defendant had a gun and she was fearful. The officer returned to the house with a sergeant and spoke to the sister. The sister went into the house and when she reappeared there was a rifle case sitting inside the door just a few feet from it. The officer testified that he could clearly see the rifle case through the screen door. He went into the house and picked up the case and went outside. The case contained an assault rifle. At the precinct, the defendant responded, “My bushmaster. I have papers. I’ve had it a long time.” The officer testified that to his knowledge the defendant was not Mirandized. A review of his criminal record revealed a prior felony conviction.
The nine-year-old daughter of the defendant testified that the wife’s sister (hereinafter aunt) did not live there, but was visiting for a few days. This caused the dispute between the defendant and his wife. The police officer asked the aunt about the gun but she said she didn’t know anything. The police asked the daughter to go into her parents’ room but she said that she was not allowed in their room. The police left the premises but returned a total of three times. On the last occasion, the police officers entered the house, went into the parents’ room, looked around for about 10 minutes and brought out the rifle case.
The Fourth Amendment of the US Constitution provides: “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .” Any search is per se unreasonable *361 unless one of the established exceptions applies. (People v Galak, 81 NY2d 463 [1993]; Mincey v Arizona, 437 US 385, 390 [1978]; Katz v United States, 389 US 347, 357 [1967].) As the Court of Appeals has stated: “[T]he privacy interest of our citizens is far too cherished a right to be entrusted to the discretion of the officer in the field.” (People v Howard, 50 NY2d 583, 588 [1980].) Accordingly, the police are not permitted to make a warrantless search of an individual’s premises unless the circumstances fall within a clearly defined exception to this rule.
The police officer appears to be relying on the plain view doctrine. This doctrine allows the police to seize contraband or illegal weapons where they have reason to believe that the object is the instrumentality of a crime. This doctrine allows seizures where (1) the police were lawfully in a position to view the object, (2) the police have lawful access to the object, and (3) the incriminating nature of the object is immediately apparent. (People v Diaz, 81 NY2d 106 [1993]; People v Polanco, 292 AD2d 29 [2002].) However, where the police have no legal right to enter a residence, they cannot justify the entry by seizing an object in plain view. (Payton v New York, 445 US 573 [1980]; People v Minley, 68 NY2d 952 [1986]; People v Francis, 209 AD2d 539 [1994]; People v Spinelli, 35 NY2d 77 [1974].) Where a warrantless entry is not justified, the police may not rely on the plain view doctrine. (Coolidge v New Hampshire, 403 US 443, 466 [1971]; People v Machovoe, 242 AD2d 898.) Where the police viewed contraband through an open door from a hallway, it is still necessary to obtain a search warrant. (People v Vega, 276 AD2d 414 [2000]; People v Okhayan, NYLJ, Nov. 21, 2003, at 23, col 3.)
In People v Funches (89 NY2d 1005 [1997]), the police responded to a call involving a dispute at a residence. The police received permission from a resident to enter a fire escape. They found a loaded handgun on the fire escape. They then climbed down the fire escape to the floor below. They peered into an open window and observed drugs and drug paraphernalia in plain view. The Court of Appeals in holding that the evidence should not be suppressed stated (at 1007):
“Given the discovery of the loaded handgun and the radio report of two men involved in a dispute, the trial court’s determination that exigent circumstances justified a warrantless entry into the apartment, in order to avert the threat of danger to the police officers on the scene, was . . . supported on *362 the record.”
It appears that this decision falls within the exigent circumstances exception rather than the plain view doctrine. Therefore, the decision is not controlling in the instant case.
The defendant has challenged the legality of the search. While the burden is on the defendant to establish the illegality of the search, the People must go forward in the first instance to show the legality of the police conduct. This requires there be a showing that the search was made pursuant to a valid warrant or there are circumstances that form an exception to the general rule. (People v Berrios, 28 NY2d 361 [1971].) Furthermore, it is the People’s burden to overcome the presumption in favor of the individual’s right to privacy. The People must show an intentional relinquishment of this right. (People v Howard, 50 NY2d 583 [1980]; People v Campbell, 245 AD2d 191 [1997].) There is conflicting testimony in this case from the police officer and the defendant’s daughter. There is no evidence that the police had permission from anyone to enter the house. The evidence tended to show that neither the daughter nor the aunt was willing to cooperate with the police. The police appear to be relying on the plain view doctrine. However, it is not reasonable to expect anyone in the house, who was clearly in fear of the police, to place the rifle case in clear sight of the police officer. Therefore, this court concludes that the testimony of the police officer was tailored to nullify constitutional objections. (People v Black, 214 AD2d 619 [1995].)
Evidence of the weapon is suppressed and any statements made by the defendant concerning the weapon are also suppressed under the fruit of the forbidden tree doctrine (Wong Sun v United States, 371 US 471 [1963]; People v Fitzpatrick, 32 NY2d 499 [1973]).
The count of criminal possession of a weapon is dismissed.