People v Jones (2019 NY Slip Op 05940)





People v Jones


2019 NY Slip Op 05940


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, CARNI, LINDLEY, AND CURRAN, JJ.


713 KA 16-01256

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ADRIAN JONES, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (KIMBERLY J. CZAPRANSKI OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (DARIENN P. BALIN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), rendered June 29, 2016. The judgment convicted defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, that part of the omnibus motion seeking to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Onondaga County, for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon his plea of guilty of attempted criminal possession of a weapon in the second degree (Penal Law §§ 110.00, 265.03 [3]), defendant contends that Supreme Court erred in refusing to suppress the handgun that he discarded while being pursued by the police. We agree.
The evidence at the suppression hearing established that a police officer in a marked patrol vehicle responded after midnight to a 911 call reporting shots fired near an apartment complex in the City of Syracuse. Upon his arrival in the area, the officer received a radio dispatch reporting that the suspect was among a group of eight men on a certain street; no further description of the suspect beyond his race was provided. The officer acknowledged that the apartment complex was large with hundreds of residents and that it was not unusual for black males to be walking around that area after midnight. As the officer drove toward the street identified in the dispatch, he saw a man later identified as defendant and a second man, both of whom were black, walking out from behind an apartment building. The officer did not see anything in the hands of either man. The men immediately turned around and ran away when they saw the officer in his patrol vehicle. The officer then relayed a description of the men over the police radio, exited his vehicle, and pursued the men on foot. After initially losing sight of the men, the officer regained sight of the second man, who was then pursued and apprehended by other police officers. At that point, the officer stopped running, then looked to his right and saw defendant emerging from behind a building approximately 30 yards away. The officer noticed that defendant had a handgun and a sweatshirt in his hand, at which point the officer pointed his own gun at defendant, informed him that he was under arrest, and ordered him to drop the handgun. Defendant then threw the handgun and sweatshirt into a trash can and fled, and the officer gave chase. After another police officer joined the officer in the chase, the officer returned to the trash can and secured the discarded handgun. Defendant was arrested by other police officers.
It is well established that, "[i]n evaluating police conduct, the court must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter" (People v Nicodemus, 247 AD2d 833, 835 [4th Dept 1998], lv denied 92 NY2d 858 [1998]; see People v De Bour, 40 NY2d 210, 222-223 [1976]). "[T]he police may pursue a [*2]fleeing defendant if they have a reasonable suspicion that defendant has committed or is about to commit a crime" (People v Martinez, 80 NY2d 444, 446 [1992]). "[A] defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the [defendant] may be engaged in criminal activity, may give rise to reasonable suspicion" (People v Sierra, 83 NY2d 928, 929 [1994]; see People v Holmes, 81 NY2d 1056, 1058 [1993]). "Flight alone, however, or even in conjunction with equivocal circumstances that might justify a police request for information . . . , is insufficient to justify pursuit because an individual has a right to be let alone' and refuse to respond to police inquiry" (Holmes, 81 NY2d at 1058).
Here, as the People correctly concede, the officer's action of pursuing defendant in response to his flight was not justified at its inception inasmuch as there were no specific circumstances indicating that defendant may have been engaged in criminal activity so as to give rise to reasonable suspicion (see People v Nunez, 111 AD3d 854, 856 [2d Dept 2013]; see generally Holmes, 81 NY2d at 1058). Although the officer observed defendant walking in the general vicinity of the reported gun shots, that observation does not provide the "requisite reasonable suspicion, in the absence of other objective indicia of criminality' " that would justify pursuit, and no such evidence was presented at the suppression hearing (People v Riddick, 70 AD3d 1421, 1423 [4th Dept 2010], lv denied 14 NY3d 844 [2010]; see People v Cady, 103 AD3d 1155, 1156 [4th Dept 2013]). In the absence of other identifying information, the fact that defendant may have matched the vague, generic description of the suspect as a black male, which could have applied to any number of individuals in the area of the large apartment complex with hundreds of residents, did not sufficiently indicate that defendant may have been engaged in criminal activity (see Nunez, 111 AD3d at 856; People v Beckett, 88 AD3d 898, 900 [2d Dept 2011]). Thus, the pursuit of defendant was unlawful.
We agree with defendant that, contrary to the court's determination and the People's contention, the record does not establish that he abandoned the handgun. "It is well established that property seized as a result of an unlawful pursuit must be suppressed, unless that property was abandoned" (People v Mueses, 132 AD3d 1257, 1258 [4th Dept 2015]; see People v Howard, 50 NY2d 583, 592 [1980], cert denied 449 US 1023 [1980]). "Property which has in fact been abandoned is outside the protection of the constitutional provisions . . . There is a presumption against the waiver of constitutional rights . . . [and, thus,] [t]he proof supporting abandonment should reasonably beget the exclusive inference of . . . throwing away' " (Howard, 50 NY2d at 592-593). "The test to be applied is whether defendant's action . . . was spontaneous and precipitated by the illegality or whether it was a calculated act not provoked by the unlawful police activity and thus attenuated from it" (People v Wilkerson, 64 NY2d 749, 750 [1984]).
The court determined that defendant's act of discarding the handgun was a calculated act not provoked by the unlawful pursuit and was thus attenuated from it. That was error. Contrary to the court's determination, there is no basis on this record to conclude that the unlawful pursuit had stopped at the time that defendant discarded the handgun. Rather, the evidence establishes that there was an ongoing, continuous pursuit of defendant and the second man that began after the officer exited his vehicle. Although the officer stopped running when other police officers pursued and apprehended the second man, the officer then looked to his right and regained sight of defendant, who was emerging—and still moving with haste—from behind a nearby building. Between the time that the officer began the pursuit and the time that he saw defendant with a handgun—during which period the officer lost sight of the two men, regained sight of the second man, pursued him, and stopped when other police officers encountered him—only one minute had elapsed (see Mueses, 132 AD3d at 1257-1258). Moreover, the evidence establishes that the other police officers continued the pursuit based on the officer's report over the police radio. We thus conclude that defendant's act of discarding the handgun was "spontaneous and precipitated by the unlawful pursuit by the police" and, therefore, the handgun should have been suppressed (Mueses, 132 AD3d at 1258; see Nunez, 111 AD3d at 856; People v Pirillo, 78 AD3d 1424, 1426 [3d Dept 2010]).
In light of our determination that the court erred in refusing to suppress the handgun obtained as a result of the unlawful pursuit, defendant's guilty plea must be vacated (see Cady, 103 AD3d at 1157). Moreover, inasmuch as our determination results in the suppression of all evidence in support of the crime charged, the indictment must be dismissed (see id.). We therefore remit the matter to Supreme Court for proceedings pursuant to CPL 470.45.
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court