Matter of Francis O. (2022 NY Slip Op 03969)

Matter of Francis O.

2022 NY Slip Op 03969

Decided on June 16, 2022

Appellate Division, First Department

Mendez, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 16, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
David Friedman Lizbeth González Manuel Mendez

 Docket No. D-02492/20 Appeal No. 15568 Case No. 2021-01936 

[*1]In the Matter of Francis O., A Person Alleged to be a Juvenile Delinquent Presentment Agency et al.,

Francis O. appeals from the order of the Family Court, New York County (Carol Goldstein, J.) entered on or about May 27, 2021, which denied appellant's motion to expunge all DNA evidence collected from him in this proceeding.

Steven P. Forbes, Huntington, for appellant.
Georgia M. Pestana, Corporation Counsel, New York (Susan Paulson and Rebecca L. Visgaitis of counsel), for Presentment Agency and the New York Police Department.

Mendez, J. 

Francis O. (appellant) appeals the denial of his motion for an order directing the New York Police Department (NYPD) and the Office of the Chief Medical Examiner (OCME) to expunge all records, including samples, specimens, extracts, tests, reports, analyses, database profiles, or other identifying documents relating to the testing of a sample of his DNA pursuant to Executive Law § 995-c(9)(b). Appellant argues that Family Court, which has discretion to order the NYPD and the OCME to expunge any DNA sample collected from him, improvidently exercised its discretion in denying his motion to expunge because his constitutional and due process rights were violated when his DNA sample was collected without his knowledge or consent, and without any valid purpose. We agree and therefore reverse.
On March 4, 2020, Corporation Counsel of the City of New York (the presentment agency) filed a petition pursuant to article 3 of the Family Court Act seeking an adjudication from Family Court that appellant was a juvenile delinquent. The petition alleged that appellant, while aided by another, committed acts that, if committed by an adult, would constitute the crimes of robbery in the second degree, robbery in the third degree, grand larceny in the fourth degree, petit larceny, and criminal possession of stolen property in the fifth degree. Specifically, the petition alleged that on October 29, 2019, appellant, while aided by another, forcibly stole property consisting of a credit card or debit card.
Appellant, then a 16-year-old minor, was arrested for the alleged offense on October 29, 2019. On October 31, after he had been in pre-arraignment detention, and inside a police interrogation room for two days, the NYPD interrogated him without an adult present. During the interrogation, a police officer offered him water in a disposable cup. After appellant drank from the cup, the officer retrieved it, vouchered it as abandoned, and sent it for DNA analysis to the OCME. At the time he took appellant's DNA, the officer knew there was no DNA evidence collected from the incident for which appellant was arrested, and there was nothing to compare with any DNA sample that could be obtained from the cup. There was simply no forensic purpose to collect DNA in the case on which appellant was being held.
Appellant first learned that the cup had been sent for DNA analysis on March 9, 2020, when the presentment agency, as part of discovery, filed a voluntary disclosure form and attached a DNA analysis report from the OCME, dated January [*2]16, 2020. In the disclosure form, the presentment agency stated that the cup appellant drank from at the police station had been analyzed, and that no further interpretation would be done because the cup was submitted as a pseudo-exemplar (an exemplar taken without undisputed documentation as to its owner) and DNA from more than one person was detected. The report further stated that the DNA extracts from the samples and controls tested would be retained per forensic biology protocol, and the remainder of the evidence would be returned to the OCME Evidence Unit.
On October 12, 2020, after his motion for assignment of a DNA expert had been granted by the court, appellant filed a motion for an order directing the NYPD and OCME to expunge all records and samples relating to the testing of his DNA sample. Appellant argued that Family Court has discretion to order the NYPD and the OCME to expunge any DNA sample collected from him and that his constitutional and due process rights were violated when a sample of his DNA was taken without his knowledge or consent.
In opposition, the presentment agency argued that Family Court is a court of limited jurisdiction and lacked the proper authority to order the expungement of appellant's DNA and any other documents related to the testing of his DNA. The presentment agency further argued that appellant lacked standing because the cup was abandoned; therefore, he had no privacy interest in it, and discretionary expungement was not applicable to abandoned samples. Alternatively, the presentment agency took no position with respect to expungement if the court found it had jurisdiction to order it.
On March 30, 2021, before Family Court decided the motion, appellant admitted to criminal possession of stolen property in the fifth degree, a class A misdemeanor, was adjudicated a juvenile delinquent, and sentenced to a six-month conditional discharge.
By order dated May 27, 2021, Family Court denied appellant's motion, finding "the DNA extract taken from the cup would have very limited value to the police. No DNA profile was able to be obtained from [appellant's] DNA sample because [the sample] contained DNA from more than one person. The DNA sample might only be useful if [appellant] was named as a suspect in a future crime and there was DNA evidence associated with that crime which was suitable for comparison with the mixed DNA sample obtained from the . . . cup." The court further found that, "the cup 'appears' to have been abandoned by [appellant]. Due to its abandonment the presentment agency contends that [appellant] has relinquished any privacy interest in the cup and the DNA extract obtained from the paper cup." The court considered "the abandonment of the cup to be a factor that weighe[d] against discretionary expungement."
We find that Family Court, as the trial level court where appellant was adjudicated, has jurisdiction under the Executive Law to order expungement of appellant's DNA records. We further [*3]find that under the facts presented, it has not been established that appellant abandoned the cup containing his DNA material or waived his privacy interest in the cup, and therefore has standing to challenge the taking of a sample of his DNA, which was obtained without his knowledge or consent and in violation of his constitutional and due process rights. We also find that under the totality of the circumstances, it was an improvident exercise of the court's discretion to deny expungement of his DNA sample and all related information.
Family Court Has Jurisdiction to Order Expungement We have previously held that under the Executive Law, Supreme Court, as the court in which the original judgment of conviction was granted, has discretionary authority to order the expungement of a youthful offender's DNA records contained not only in the state database, but also in the database of the OCME. Even though Executive Law § 995-c does not make any reference to youthful offender adjudications, subdivision 9(b)(iii) provides for discretionary expungement because a youthful offender could never qualify for automatic expungement from the database, as no DNA can be collected from such a youth postdisposition. Indeed, pursuant to Criminal Procedure Law (CPL) 720.35, when an eligible youth receives youthful offender treatment, the criminal conviction is deemed vacated and is replaced by a youthful offender adjudication; at that point, the defendant is no longer deemed a "designated offender" required to provide a postconviction DNA sample. Any rights that a youthful offender may have to expungement, therefore, flow only from the discretionary authority the statute provides to the court with respect to DNA material that may have been collected during the investigatory, preconviction phase of a criminal proceeding (Matter of Samy F. v Fabrizio, 176 AD3d 44, 56 [1st Dept 2019], lv dismissed 34 NY3d 1033 [2019]; Executive Law § 995-c [9][b]).
While appellant here is not a youthful offender, the holding in Samy F. applies equally to persons adjudicated juvenile delinquents. Like a youthful offender, a minor adjudicated a juvenile delinquent is not a "designated offender" under the Executive Law, nor can a juvenile delinquency proceeding result in a conviction. Therefore, although the Family Court Act is silent on whether DNA evidence may be destroyed or sealed, the absence of such language does not preclude Family Court, as the trial court, from exercising its discretionary authority and ordering expungement of DNA material. "The intent of the juvenile delinquency article is to empower the Family Court to intervene and positively impact the lives of troubled young people while protecting the public" (Family Ct Act § 301.1; Matter of Emily P., 63 Misc 3d 755, 759 [Fam Ct, NY County 2019]).
A juvenile delinquency adjudication, just as a youthful offender adjudication, is not a criminal conviction and a juvenile delinquent should not be denominated a criminal [*4]by reason of such adjudication (Green v Montgomery, 95 NY2d 693, 697 [2001] citing Family CtAct § 380.1[1]). A juvenile delinquent is not and should not be afforded fewer adjudication protections than a youthful offender or an adult in the equivalent circumstances (Matter of Samy F., 176 AD3d at 55; Matter of Jahsim R., 66 Misc 3d 426, 430 [Fam Ct, Bronx County 2019]; Matter of John R., 69 Misc 3d 493, 501-502 [Fam Ct, NY County 2020]). Family Court, therefore, has the discretion to order the expungement of appellant's DNA and any other documents related to the testing of his DNA sample.
Appellant's Constitutional and Due Process Rights Were Violated To determine whether or not property has been abandoned and whether appellant had divested himself of the expectation of privacy, the court must look at appellant's intent (People v Marrero, 173 AD2d 244, 245 [1st Dept 1991], lv dismissed 78 NY2d 969 [1991] citing People v Hernandez, 162 AD2d 417 [1st Dept 1990]).
As the Court of Appeals has held:
"Property is deemed abandoned when the expectation of privacy in the object or place searched has been given up by voluntarily and knowingly discarding the property. The result is a waiver of the constitutional protection. The burden rests upon the People to establish the waiver. A defendant's intention to relinquish an expectation of privacy will be found if the circumstances reveal a purposeful divestment of possession of the item searched." (People v Ramirez-Portoreal, 88 NY2d 99, 110 [1996]).
Thus, as the Court of Appeals has also noted, the proof supporting abandonment "should reasonably beget the exclusive inference of the throwing away" — that is, the intention to actually discard the evidence must be absolutely clear (People v Howard, 50 NY2d 583, 593 [1980] quoting Foulke v New York Consol. R. R. Co., 228 NY 269, 273 [1920]). Even where abandoned, if the abandonment is coerced or precipitated by unlawful police activity, then the seized property may be suppressed because it constitutes "fruit of the poisonous tree" (Ramirez-Portoreal, 88 NY2d at 110 [internal quotation marks omitted]). For appellant to have abandoned the cup, he should have "purposefully divested himself of possession" of the cup and any DNA contained thereon by throwing it away and thus waiving his constitutional rights (Howard, 50 NY2dat 593).
It has not been established that appellant purposefully divested himself of the cup or his DNA, thereby relinquishing his expectation of privacy. Nor has it been established that he waived, impliedly or explicitly, his constitutional rights to that expectation. When looking at the totality of the circumstances and the manner appellant's DNA sample was collected, it can be inferred that appellant, a 16-year-old minor, who had been inside a police interrogation room for two days without an adult relative present, was unaware that the cup, in which he had been offered a drink of water, would be used to collect a DNA sample that [*5]could be used against him at a later date and retained by OCME in perpetuity. Appellant was offered a drink of water in a disposable cup with the sole intention of collecting his DNA sample. This much can be inferred from statements by an Assistant Corporation Counsel at proceedings before the court on August 28, 2020, when she stated,
"So as the court is aware the NYPD on occasion will take an abandonment sample from a youth when they are arrested. . . . So in this case that was done. There was zero, no DNA evidence recovered during this case. The police took the abandonment sample[;] however, there was no DNA to compare it to. The abandonment sample was sent to determine if they could recover DNA from the abandonment sample[;] however, whether or not DNA was recovered from the abandonment sample is not relevant to this case. . . ."
Furthermore, the record is silent as to where the supposedly "abandoned" cup was retrieved from as the Property Clerk Invoice and the Request for Laboratory Examination Report state only "DNA abandonment sample," with no further elaboration. Similarly, in the Preliminary Statement of its brief, the presentment agency states, "During an investigative interview following his arrest, a police officer offered [appellant] a cup of water which the officer collected after the interview and vouchered as a DNA abandonment sample," and in the Statement of The Case states, "The NYPD arrested [appellant] on the date of the [offense]. Two days later, during an interrogation interview, an NYPD officer offered [appellant] a cup of water. At the end of the interview, the officer collected the cup and vouchered it as a DNA abandonment sample." Thus, the record makes clear that we do not know where the officer "collected" the disposable cup from.[FN1] We cannot assume from these circumstances that the cup was in fact abandoned, and the officer's statement that it was abandoned does not, without any more details, make it so. Indeed, the court appeared unsure the cup was abandoned when in its decision it stated, "the cup 'appears' to have been abandoned." If the cup was not abandoned, appellant retained an expectation of privacy in any DNA sample collected from it and therefore has standing to seek expungement. It is the presentment agency's burden to show that appellant abandoned the cup from which his DNA sample was extracted and waived his constitutional protections (see Ramirez-Portoreal, 88 NY2d at 110).
Just as in John R. and Jahsim R., appellant's DNA sample was taken surreptitiously, without his knowledge or consent. However, unlike in the cases of John R. and Jahsim R., where DNA evidence was collected from the crime scene, here the DNA sample taken from appellant has absolutely no connection to the incident for which he was arrested. The DNA sample was taken from appellant as part of the NYPD's admitted practice of taking DNA specimens from minors suspected of a crime, and in this specific case, in order to keep that DNA [*6]profile in OCME's database for possible future use.
DNA evidence obtained after an arrest should be material and relevant and should have a link to the charges for which the individual is arrested. There must be an articulable basis to obtain this DNA evidence and a correlation to the investigation or prosecution of the charged offense. That articulable basis to obtain appellant's DNA is lacking here. The DNA sample taken from appellant has no connection to the charged offense and was only taken for "potential" future use. Indeed, under the facts of this case, absent consent or, as alleged, abandonment, the police officer would not have been able to obtain a court order to collect a sample of appellant's DNA, because "a court will only issue an order to collect a DNA sample when there is: "(1) probable cause to believe defendant has committed a crime, (2) a 'clear indication' that relevant evidence will be found, and (3) the method used to secure it is safe and reliable" (Matter of Samy F., 176 AD3d at 53; citing People v Debraux, 50 Misc 3d 247, 260 [Sup Ct, NY County 2015], citing Matter of Abe A., 56 NY2d 288, 291 [1982]). These criteria are absent here. Further, there was no relevant evidence collected from the incident.
The Totality of the Circumstances Warrants Expungement of Appellant's DNA Records and Other Identifying Documents In Matter of Samy F., although we did not direct the presentment agency how to exercise its discretion when considering whether to expunge DNA records, we stated, among other relevant factors, the court should consider:
"(1) the events surrounding the underlying YO finding, (2) the extent of petitioner's participation in the underlying offense, (3) the circumstances surrounding petitioner's consent to DNA sampling, including his age when such consent was provided, his claim of developmental delays and the absence of a parent or other adult at the time of his consent" (Matter of Samy F., 176 AD3d at 56).
In Matter of Jahsim R., in ordering expungement of a DNA sample surreptitiously collected from a 15 year old adjudicated a juvenile delinquent after admitting to sexual abuse in the first degree, a class D felony, the court considered the manner in which the DNA sample was obtained, the age of the respondent, and the charges brought by the presentment agency. The juvenile was offered a water bottle at the time of arrest, and while he was still handcuffed at the precinct, he put the water bottle down and fell asleep. The water bottle was then taken by police, vouchered, and given to OCME, and a DNA sample was extracted. Respondent was sentenced to 12 months of probation (Matter of Jahsim R., 66 Misc 3d at 427, 430)
In Matter of John R., in ordering expungement of a DNA sample surreptitiously collected from a 14 year old who was adjudicated a juvenile delinquent after admitting to forcible touching, a class A misdemeanor, and attempted criminal obstruction of breathing or blood circulation, a class B misdemeanor[*7], the court also considered the manner in which the DNA sample was obtained, the age of the juvenile, and the charges brought by the presentment agency. The police gave the juvenile a can of soda at the precinct and his genetic material was surreptitiously taken from the soda can. The soda can was taken by police, vouchered, and given to OCME, which extracted a DNA sample. The juvenile's proceeding was adjourned in contemplation of dismissal, which he successfully completed (Matter of John R., 69 Misc 3d at 495, 496). In both Jahsim R. and John R., there was DNA recovered from the victims to compare with any DNA samples taken from the juveniles.
Appellant's DNA sample was also obtained surreptitiously. The police officer offered him a drink of water in a disposable cup which was later collected, vouchered, and sent to OCME for DNA extraction. Appellant was 16 years old at the time of arrest, and had been in police custody at the precinct interrogation room for two days without a parent or other adult relative present.[FN2] There was no DNA evidence recovered from the incident to compare appellant's DNA sample to, and his DNA was taken for the sole purpose of maintaining his profile in the OCME database for possible future use.
Pursuant to Family Court Act § 354.1 (2),
"if the young person is not adjudicated a juvenile delinquent for a felony, the clerk of the court must notify police and other law enforcement that fingerprints, palmprints or photographs taken of the young person are to be destroyed 'without unnecessary delay.' The DNA profile of a youth is the same type of identifying information as fingerprints, palmprints and photographs. Indeed, a DNA profile is often referred to as a DNA or genetic fingerprint" (Matter of John R., 69 Misc 3d at 503).
The statutory purpose of juvenile delinquency proceedings is to focus on rehabilitation over punishment; the court is to consider the youths' needs and best interests, and to afford youths so adjudicated with a fresh start (Family Ct Act § 301.1). Under the totality of the circumstances, maintaining appellant's DNA profile in OCME's database in perpetuity is completely incompatible with the statutory goal and would result in a substantial injustice to the appellant.
Accordingly, the order of the Family Court, New York County (Carol Goldstein, J.) entered on or about May 27, 2021, which denied appellant's motion to expunge all DNA evidence collected from the cup, should be reversed on the law, and as an exercise
of discretion in the interest of justice, without costs, and the motion granted.
All concur except Friedman, J. who dissents in
an Opinion.

Friedman, J. (dissenting)
 

I do not take issue with the majority's view, and that of Family Court, that, in a proper case, Family Court has jurisdiction, in a juvenile delinquency proceeding, to entertain an application for the expungement of DNA evidence pursuant to Executive Law § 995-c(9)(b) (see Matter of John R., 69 Misc 3d 493 [Fam Ct, NY [*8]County 2020]). The recognition of such jurisdiction merely extends to juvenile delinquency cases the logic of this Court's decision in Matter of Samy F. v Fabrizio (176 AD3d 44 [1st Dept 2019], lv dismissed 34 NY3d 1033 [2019]), in which we held that an adjudicated youthful offender may seek such relief inasmuch as "[a] youthful offender does not have and should not be afforded fewer pre-YO adjudication protections than an adult in the equivalent circumstances" (id., 176 AD3d at 55). By the same token, an adjudicated juvenile delinquent should be afforded no less protection with regard to DNA evidence than an adult defendant.
The problem with permitting an application for expungement under the circumstances of this case is that it affords appellant greater protection than a similarly situated adult defendant would enjoy under the governing statute. Under Executive Law § 995-c(9)(b), the right to apply to the court to exercise its discretion to order the expungement of DNA evidence is granted only to an individual who, "either voluntarily or pursuant to a warrant or order of a court, has provided a sample for DNA testing in connection with the investigation or prosecution of a crime" (emphasis added).[FN3] In this case, there is no dispute that appellant did not provide a DNA sample "either voluntarily or pursuant to a warrant or order of a court." On the contrary, appellant, in his appellate brief, affirmatively takes the position that the police obtained his DNA "surreptitiously and without [his] consent or knowledge." In this regard, on the very first page of his brief, appellant represents: "NYPD personnel secured a DNA sample from a cup that [he] had been provided (by NYPD personnel) which [he] then discarded. At no point was [he] made aware of the fact that his DNA sample was being taken."
The majority, far from asserting that appellant provided a DNA sample voluntarily or pursuant to a court order, takes the position that the DNA sample may have been improperly obtained because the presentment agency has not demonstrated, to the majority's satisfaction, that appellant had abandoned the cup from which the sample was obtained. The majority thus concedes (as does appellant himself) that the statutory predicate for entertaining an expungement application — the applicant's voluntary or court-ordered provision of the sample — is absent. Apart from this barrier blocking the majority's chosen path, a further difficulty for the majority is the lack of any support for its unstated assumption that the presentment agency bore the burden of proving that the cup had been abandoned. The majority points to no evidence in the record that would indicate that the sample may have been obtained improperly. If appellant believed that the sample had been obtained in violation of his rights, he should have come forward with evidence raising such an issue, but no such evidence was presented; rather, the expungement application was supported by an affirmation [*9]of counsel, not by any affidavit or testimony by appellant himself. Moreover, as previously noted, appellant's brief on appeal affirmatively represents that the police provided him with the cup, which, as one would expect, he subsequently "discarded" — which is just another way of saying that the cup was abandoned. In sum, the majority's view that "appellant's constitutional and due process rights were violated" is entirely unfounded.
Finally, even if Family Court had the authority to entertain appellant's application to expunge the DNA evidence, that application was addressed to the court's discretion (see Samy F., 176 AD3d at 56). Here, Family Court's exercise of its discretion to deny the application was entirely proper, in view of the total circumstances of this case, including appellant's age, his nonsealed legal history, the charges brought against him, and the events surrounding the underlying delinquency finding (see id.). Appellant was 16½ years old at the time of the offense and 17 at the time of his arrest and when the DNA sample was obtained. He was initially charged with robbery in the second degree and related offenses, in an incident in which he and two others allegedly approached a stranger, demanded money, threatened violence, pushed the victim against a wall, grabbed his wallet, and fled. In a negotiated plea bargain, appellant ultimately admitted to criminal possession of stolen property in the fifth degree. He had a prior delinquency adjudication for grand larceny from a person, and another delinquency proceeding was commenced against him during the pendency of this matter, also for grand larceny from a person, which proceeding was dismissed as part of the negotiated plea deal. Under these circumstances, it cannot be said that Family Court abused its discretion in denying the
expungement application.
For the foregoing reasons, I believe that we should affirm the order appealed from.
Accordingly, I respectfully dissent.
Order Family Court, New York County (Carol Goldstein, J.) entered on or about May 27, 2021, reversed on the law, and as an exercise of discretion in the interest of justice, without costs, and the motion granted.
Opinion by Mendez, J. All concur except Friedman, JJ.
who dissents in an Opinion.
Gische, J.P., Friedman, González, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 16, 2022

Footnotes

Footnote 1: Was it from the trash, from the top of a table, was it left behind, did the officer ask appellant to hand it over knowing full well that it would be used to try to obtain a sample of his DNA, or did the officer, as was done in Matter of Jahsim R., take the cup from him when he fell asleep? Only the officer knows, and he has not said how the cup was abandoned by appellant.

Footnote 2: Appellant was arrested at 4:30 p.m. on October 29, 2019, and his sample was collected two days later at 2:25 a.m.

Footnote 3: That the present statute limits the right to seek expungement to individuals who have provided DNA samples voluntarily or pursuant to a court order is confirmed by the proposal in the legislature to amend § 995-c(9)(b) to apply to any samples "law enforcement has obtained" (NYS Assembly Bill A06124 [2021], https://perma.cc/49WF-LMCQ [last accessed May 20, 2022]). If jurisdiction already existed to entertain applications to expunge DNA samples not provided voluntarily or by court order, there would be no reason to consider such an amendment of the statute.